**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**February 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

YOLANDA MARIE EDGERTON,

    Defendant-Appellant.

No. 05-3167

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 04–CR-40045-01-SAC)**

---

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

B. Kay Huff, Lawrence, Kansas, for Defendant-Appellant.

---

Before **McCONNELL** and **BALDOCK**, Circuit Judges, and **ARMIJO**, District Judge.[*]

---

**BALDOCK**, Circuit Judge.

---

A Kansas state trooper on nighttime patrol stopped Defendant Yolanda Edgerton's vehicle along I-70 because he could not read its temporary registration tag while in transit. A subsequent search of Defendant's vehicle uncovered over twenty kilograms of cocaine.

---

[*] The Honorable M. Christina Armijo, United States District Judge for the District of New Mexico, sitting by designation.

Defendant pled guilty to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, while reserving her right to appeal the district court's denial of her motion to suppress. See Fed. R. Crim. P. 11(a)(2). We exercise jurisdiction under 28 U.S.C. § 1291. The seminal issue in this case is whether the unobscured temporary Colorado registration tag, displayed consistent with Colorado law in the rear window of Defendant's vehicle but illegible from a distance due to nighttime conditions, constituted a violation of Kansas law, thereby justifying Defendant's continuing detention – a detention which led to Defendant's consent to search and discovery of the contraband. For reasons that follow, we think not, and hold Defendant's continuing detention exceeded the permissible scope of the stop contrary to the Fourth Amendment. Accordingly, we reverse the district court's denial of Defendant's motion to suppress evidence arising from her unlawful detention.

I.

The relevant historical facts are undisputed and taken from the transcript of the suppression hearing and videotape of the stop. On March 27, 2004, at approximately 2:30 a.m., Kansas State Trooper Andrew Dean was patrolling I-70 eastbound near milepost 316 under normal nighttime conditions. Trooper Ranieri accompanied Trooper Dean in the patrol car. Trooper Dean observed a white Mercedes-Benz passenger vehicle also traveling eastbound around the authorized speed limit of 70 mph. The vehicle did not have a license plate in its rear brackets, but displayed a plate-sized temporary registration tag in the rear

2

window.[1] Trooper Dean testified he could not read the state of origin or the numbers of the tag from a distance of "four to five car lengths," so he decided to stop the vehicle "for a tag violation." The vehicle promptly pulled over, whereupon Trooper Dean approached the vehicle on foot. At the hearing, Trooper Dean testified to the following observations upon his approach:

A. As I walked up to the vehicle, I could see that it was a temporary tag in the back window, a Colorado temporary tag.

Q. Okay. And was it obscured in any way?

A. No.

Q. Why couldn't you see it?

A. Well, whenever you're coming up behind cars like that at night when it's dark out, it's hard to see them. With your headlights you would think you would be able to see them, but you can't, especially I couldn't read the numbers on it and so I wanted to make contact to make sure that it was all valid.

Q. And when were you first able to determine that it appeared to be a valid temporary tag in the back window of the vehicle?

A. As I approached the vehicle I could see it with my lights and my flashlight, I could see the tag.

On cross-examination, Trooper Dean reiterated that he could not read the registration tag at a distance because "it was dark out." He repeated he could read the plate-sized tag, which appeared valid, once he approached the vehicle on foot.

---

[1] To illustrate, a photograph of the vehicle's temporary registration tag as it appeared at the time of the stop is included at the end of this opinion.

3

Trooper Dean informed Defendant he had stopped her vehicle to make sure its temporary registration tag was valid. He asked for Defendant's license and registration papers, which she provided, and returned to his patrol car. During this initial encounter between Trooper Dean and Defendant, Trooper Ranieri inspected the rear end of the vehicle with his flashlight, dropping to his knees at one point to examine the vehicle's underbelly. Back in the patrol car, the officers conversed (the audio on the videotape goes silent at this point) while Trooper Dean prepared a warning ticket for a violation of § 8-133 of the Kansas Vehicle Code. Section 8-133 provides in relevant part:

> Every license plate shall at all times be securely fastened to the vehicle to which it is assigned so as to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate, *in a place and position to be clearly visible*, and shall be maintained free from foreign materials and in a condition to be clearly legible.

Kan. Stat. Ann. § 8-133 (emphasis added).[2] Upon returning Defendant's license and registration and handing her the warning ticket, Trooper Dean asked and received

---

[2] Section 8-133's reference to "[e]very license plate" apparently includes temporary registration permits. Kan. Stat. Ann. § 8-126a provides:

> **Number plates or tags; definitions.** Whenever in this act or in any other law of this state relating to registration of motor vehicles any of the following words or terms are used: 1. Number plate or plates. 2. License number plates. 3. License number plate. 4. Number plate. 5. Number plates. 6. Registration number plate. 7. License tags. 8. Tags; or any other word, term or phrase of similar import or meaning is used in any such law, the same shall be construed to mean and include any plate, tag, token, marker or sign issued under the provisions of this act for the purpose of identifying vehicles registered under the provisions of the motor-vehicle registration laws of this state or otherwise carrying out the provisions of such laws.

Defendant's permission to search the vehicle's trunk. Once inside the trunk, the Troopers' suspicions of drug activity mounted. To make a long story short, the Troopers eventually uncovered the cocaine in a secret compartment in the back wall separating the vehicle's trunk from its back seat.

In the district court, Defendant challenged both the stop and detention. The district court rejected Defendant's challenge in a thorough written order. As to the stop, the court concluded Trooper Dean had "probable cause" to stop Defendant's vehicle based on a violation of § 8-133. According to the court: "Temporary tags must comply with K.S.A. 8-133, and "clearly legible" means the tag on a moving car is capable of being read by an officer in a car immediately following a safe distance behind." In rejecting Defendant's challenge to her continuing detention once Trooper Dean was able to view the temporary tag following the initial stop, the court reasoned: "[T]he violation for which the stop was made was that the car as it was traveling at night did not have a license plate that was clearly visible and clearly legible. The probable cause for this stop did not dissipate when Trooper Dean approached on foot and used his flashlight to read the tag."

On appeal, Defendant again challenges the entirety of her encounter with Trooper Dean. Specifically, Defendant contends Trooper Dean lacked reasonable suspicion to stop her vehicle because its temporary registration tag was visible, legible, and properly displayed in compliance with Colorado law. In the alternative, Defendant asserts that, even assuming the validity of the initial stop, Trooper Dean's reasonable suspicion dissipated once he was

5

able to read the tag. Thus, Defendant's continued detention while Trooper Dean examined her documents and prepared a warning ticket exceeded the scope of the stop's underlying justification.[3]

## II.

The detention of a driver, however brief, during the course of a routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment. See United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). The standards by which we measure the legality of such stop and resulting detention under the Fourth Amendment are well established. See Terry v. Ohio, 392 U.S. 1, 19-20 (1968). Where the historical facts giving rise to the stop and detention are undisputed, the only question is one of law, namely, whether the stop and detention, considered in light of the totality of the circumstances, were reasonable. See United States v. Dennison, 410 F.3d 1203, 1207 (10th Cir. 2005). A traffic stop is reasonable at its inception if the detaining officer, at the very least, reasonably suspects the driver has violated the law. In United States v. Callarman, 273 F.3d 1284, 1286-87 (10th Cir. 2001), we explained that while either probable cause or reasonable suspicion is sufficient to justify a traffic stop, only the lesser requirement of reasonable suspicion is

---

[3] Defendant also argues her consent to search just seconds after Trooper Dean returned her paperwork and issued her a warning ticket was insufficient to purge the taint of her illegal detention. We need not reach that argument, however, because the Government "concedes, based on the authorities cited by the defendant, that if the detention was illegal, the defendant's consent to search was thereby tainted." See United States v. Lampley, 127 F.3d 1231, 1240 n.7 (10th Cir. 1997).

necessary. See United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). Unless the officer has an objectively reasonable suspicion that illegal activity unrelated to the stop has occurred or the driver otherwise consents to the encounter, the resulting detention is reasonable only so long as the officer's subsequent conduct is reasonably related in scope to the circumstances which justified the initial stop. See United States v. Williams, 403 F.3d 1203, 1206 (10th Cir. 2005). In other words, once the purpose of the stop is satisfied and any underlying reasonable suspicion dispelled, the driver's detention generally must end without undue delay. See United States v. Millan-Diaz, 975 F.2d 720, 721-22 (10th Cir. 1992).

A.

Defendant first challenges Trooper Dean's initial stop of her vehicle. To uphold that stop, we must conclude Trooper Dean, based upon the facts known to him, possessed reasonable suspicion of legal wrongdoing, i.e., a particularized and objective basis for believing Defendant had violated some law. See Williams, 403 F.3d at 1207. While something more than a "hunch" of wrongdoing is necessary, the level of suspicion required to support a traffic stop is "considerably less" than proof of wrongdoing by a preponderance of the evidence. Dennison, 410 F.3d at 1207-08. To satisfy the Fourth Amendment's reasonableness requirement, only a "minimal level of objective justification" for a traffic stop need exist. Id. at 1207.

In this case, the district court expressly found in a second order (following Defendant's motion to reconsider) that Trooper Dean stopped Defendant's vehicle not only

because he could not read its temporary registration tag while following at a safe distance, but also because he could not determine whether the document posted in the rear window was, in fact, a temporary tag: "Instead of pulling over the defendant solely to check the validity of what he knew to be a temporary tag posted in the rear window, Trooper Dean initiated the stop because he was not even able to determine whether the defendant's car had a temporary tag." Compare United States v. Wilson, 205 F.3d 720, 722-724 (4th Cir. 2000) (en banc) (trooper's inability to read a temporary tag's handwritten expiration date due to darkness did not justify stop). The court further found Trooper Dean was able to identify and read the temporary registration tag *only after* he approached Defendant's vehicle on foot and shined his flashlight on the tag. These findings are consistent with Trooper Dean's testimony on redirect at the suppression hearing, and Defendant does not challenge them as clearly erroneous. See Bradford, 423 F.3d at 1156.

In view of the district court's factual findings, we conclude Trooper Dean's initial stop of Defendant's vehicle to ascertain its identity constituted a permissible investigative detention of limited scope consistent with the Fourth Amendment. Certainly, a vehicle's apparent failure to display some form of visible license plate/registration tag, temporary or permanent, gives rise to a reasonable suspicion that its driver might be violating "'any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" United States v. DeGasso, 369 F.3d 1139, 1143 (10th Cir. 2004) (quoting Botero-Ospina, 71 F.3d at 787); see also DeGasso, 369 F.3d at 1156 (Baldock, J. dissenting) ("A vehicle traveling

8

along a public road without a license plate presents a suspicious circumstance necessarily giving rise to reasonable suspicion of criminal activity, thereby allowing a police officer to stop the vehicle and investigate[.]"). Because the vehicle's assigned registration in this case was not readily apparent to Trooper Dean, his suspicion that Defendant was violating Kansas law pertaining to the display of license plates, specifically Kan. Stat. Ann. § 8-133, was objectively reasonable. See State v. Hayes, 660 P.2d 1387, 1388-89 (Kan. App. 1983) (relying on § 8-133 to uphold a stop of an out-of-state vehicle with a partially obscured license plate).[4] Thus, we reject Defendant's challenge to the initial stop of her vehicle.

B.

That brings us to Defendant's claim Trooper Dean unlawfully extended the duration of the stop (and her detention) beyond its limited scope once he identified the posting in the rear window of Defendant's vehicle as a valid Colorado temporary registration tag. To prove her point, Defendant relies heavily on our decision in United States v. McSwain, 29 F.3d 558, 561-62 (10th Cir. 1994). There, a Utah state trooper stopped defendant's vehicle because he could not read the temporary registration tag posted in its rear window. As the trooper approached the vehicle on foot, he observed an unobscured Colorado temporary tag

---

[4] In Hayes, a state trooper stopped an out-of-state vehicle because its state of origin was not visible on the plate. "The *only* issue on appeal [was] whether [the trooper] stopped defendant lawfully." Hayes, 660 P.2d at 1389 (emphasis added). In upholding the stop, the Kansas Court of Appeals concluded "the display of an illegible or obscured vehicle tag is a violation of K.S.A. 8-133 even if the vehicle is duly licensed in another state." Notably, the driver's detention subsequent to the initial stop was *not* an issue in that case.

9

which appeared valid. Agreeing with defendant that the trooper unduly prolonged a detention which ultimately led to the discovery of contraband, we held:

> Once Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. Trooper Avery's further detention of the vehicle to question Mr. McSwain about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification.
>
> * * *
>
> Having no objectively reasonable articulable suspicion that illegal activity had occurred or was occurring, Trooper Avery's actions in questioning Mr. McSwain and requesting his license and registration exceeded the limits of a lawful investigative detention and violated the Fourth Amendment.

Id. at 561 (internal citation, quotations, and brackets omitted).

The Government asserts McSwain is "easily distinguishable" from this case. Trooper Dean stopped Defendant's vehicle because its temporary registration display purportedly violated Kan. Stat. Ann. § 8-133. In contrast, the sole purpose of the trooper's stop in McSwain was to check the validity of the registration tag. Because, according to the Government, the purpose of the stop in this case had *not* been satisfied once Trooper Dean was able to read the apparently valid tag, Trooper Dean acted reasonably in requesting Defendant's documentation and detaining her while he prepared a warning ticket. See United States v. Gregoire, 425 F.3d 872, 879 (10th Cir. 2005) ("In a routine traffic stop, a trooper may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation."). The Government's purported distinction of McSwain thus hinges on its legal argument that the temporary

10

registration display in this case violated Kan. Stat. Ann. § 8-133. We do not agree.

In determining the lawfulness of Defendant's detention following the initial traffic stop, we first ask whether Kansas law or – as a result of Kansas's reciprocity statute, Kan. Stat. Ann. § 8-138a[5] – Colorado law, the law of the state in which Defendant's vehicle was registered, governs the vehicle registration tag's manner of display. See Hayes, 660 P.2d at 1389 ("While 8-138a grants reciprocity, it does not grant total exemption from Kansas law.").[6] We need not answer that question, however, because the Colorado statute governing the display of license plates is virtually identical to its Kansas counterpart. Both thus require license plates to be "in a place and position to be clearly visible." See Kan. Stat. Ann.

---

[5] Section 8-138a provides:

> **Nonresident owners licensed in state of residence; reciprocal privileges.** The provisions of this section shall apply only to the nonresident owner or owners of any motor vehicle constructed and operated primarily for the transportation of the driver or the driver and one or more nonpaying passengers. Such nonresident owners, when duly licensed in the state of residence, are hereby granted the privilege of operation of any such vehicle within this state to the extent that reciprocal privileges are granted to residents of this state by the state of residence of such nonresident owner.

See State v. Wakole, 959 P.2d 882 (Kan. 1998).

[6] In United States v. Ramstad, 308 F.3d 1139, 1145 (10th Cir. 2002), we relied on Kan. Stat. Ann. § 8-138a to uphold the Kansas stop of a California vehicle for failure to comply with California's law requiring the display of both front and back license plates. That does not provide any support for the Government's argument here, because Defendant's vehicle registration was in compliance with the law of her home state. See infra, at 12-13 & n.8.

§ 8-133; Colo. Rev. Stat. § 42-3-202(2)(a).[7]

In <u>People v. Redinger</u>, 906 P.2d 81 (Colo. 1995), the Colorado Supreme Court recognized the legality of posting a temporary registration tag in a vehicle's rear window during nighttime hours on facts indistinguishable from the present.[8] Around 2:00 a.m, a Colorado State Trooper stopped defendant's vehicle on I-25 "because he did not see a license plate or temporary sticker on the rear of Redinger's vehicle." <u>Id.</u> at 82. The trooper suspected a violation of a state law requiring license plates to be "clearly visible." <u>Id.</u> at 82

---

[7] Section 42-3-202(2)(a) provides:

> Every number plate shall at all times be securely fastened to the vehicle to which it is assigned, so as to prevent the plate from swinging, and shall be horizontal at a height not less than twelve inches from the ground, measuring from the bottom of such plate, *in a place and position to be clearly visible*, and shall be maintained free from foreign materials and in a condition to be clearly legible.

(emphasis added).

[8] A Colorado motor vehicle regulation specifically authorizes the posting of temporary registration permits in the rear window of a newly-purchased vehicle:

> *Permits may be affixed on the lower lefthand corner of the rear window of cars which have rear windows . . .* (Permits are always placed on the inside.) Permits properly mounted and clearly visible, when enclosed in a transparent weatherproof covering, may be attached to the rear of the vehicle in the place and manner provided for attaching a rear license plate. (This is an optional method and the previous method of affixing Permits applies in all cases other than outlined above.)

1 Colo. Code. Regs. § 204-2H. (Temporary Registration Permits) (emphasis added).

& n.1 (interpreting a prior version of § 42-3-202 then located at § 42-3-113). As he walked towards the vehicle, the trooper "observed a valid temporary registration plate properly displayed in the rear window on the driver's side thereof." Id. at 82. When defendant reached for his license at the trooper's behest, a bag of white powder fell from his wallet. Relying extensively on McSwain's rationale, the court suppressed the evidence. The court held a trooper who properly initiates an investigatory stop based on reasonable suspicion that the driver has violated a motor vehicle law may *not,* consistent with the Fourth Amendment, detain and interrogate the driver after the trooper learns the initial suspicion is "ill-founded." Id. at 84.

Although neither party points to any Kansas law so directly on point, we have no reason to doubt that the language of Kan. Stat. Ann. § 8-133 has the same meaning as its Colorado counterpart. The Government cites to nothing in Kansas law forbidding the placement of a temporary registration tag in the rear window of a vehicle (or directing its placement in any particular place), and we consider the Government's contrary interpretation of § 8-133 highly improbable. Trooper Dean testified, the district court found, and the Government acknowledges the *only* reason the registration tag's "manner of display" was purportedly unlawful in this case was because "it was dark out" and he could not see or read it. Compare Redinger, 906 P.2d at 82. Simply put, the tag was illegible not due to any material within Defendant's ability to control, but due to external conditions. Compare DeGasso, 369 F.3d at 1141 (noting the truck's rear license plate was "mounted too low"

13

obscuring the lettering at the bottom of the plate); People v. Altman, 938 P.2d 142, 143 (Colo. 1997) (noting the rear of the vehicle was covered with dirt obstructing the rear license plate). Under the Government's interpretation of § 8-133, snow, rain, fog, glare, or even an officer's poor eyesight might render a temporary registration illegible and in violation of the statute. Anyone driving under less than optimal viewing conditions in Kansas with an otherwise unremarkable temporary registration tag posted in the rear window would risk violating § 8-133.

We decline to require optimal viewing conditions before compliance with a statute requiring an otherwise unremarkable license plate to be "clearly visible" is assured. Fourth Amendment reasonableness does not depend on external conditions, but on a reasonable suspicion that a driver has violated the law. The notion that an unobscured, wholly unremarkable Colorado temporary registration tag posted in the rear window of Defendant's vehicle consistent with Colorado law was not "clearly legible" within the meaning of Kan. Stat. Ann. § 8-133 because "it was dark out" proves too much for us. Every temporary tag is more difficult to read in the dark when a car is traveling 70 mph on the interstate. But that does not make every vehicle displaying such a tag fair game for an extended Fourth Amendment seizure.

Once Trooper Dean was able to read the Colorado tag and deem it unremarkable, any suspicion that Defendant had violated § 8-133 dissipated because the tag was in "in a place and position to be clearly visible." At that point, McSwain instructs us for better or worse

14

that Trooper Dean, as a matter of courtesy, should have explained to Defendant the reason for the initial stop and then allowed her to continue on her way without requiring her to produce her license and registration. See McSwain, 29 F.3d at 562. Of course, we do not discount the possibility in similar circumstances that the brief encounter between an officer and driver authorized by McSwain might independently give rise to facts creating reasonable suspicion of criminal activity, thus warranting further investigation. For instance, at the commencement of his encounter with Defendant in this case, Trooper Dean noted Defendant's nervousness, an air freshener hanging from the rear console, and "energy drinks" inside the vehicle. The district court, however, made no finding in this case that the facts which Trooper Dean observed independently gave rise to reasonable suspicion and the Government makes no such argument on appeal. See United States v. Cervini, 379 F.3d 987, 994 n.5 (10th Cir. 2004) (noting arguments not raised may be deemed waived). We therefore end our analysis here.

The order of the district court denying Defendant's motion to suppress is–REVERSED.

