**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DONACIANO MONJE-CONTRERAS,
also known as Ramiro Rivera-Mendoza,

     Defendant-Appellant.

No. 06-8032
(D.C. No. 05-CR-164-J)
(Wyoming)

**ORDER AND JUDGMENT**[*]

Before **MURPHY,** Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HARTZ,** Circuit Judge.

     In a five-count indictment filed on July 13, 2005, Donaciano Monje-Contreras (the "Defendant") was charged as follows: (1) possession, with an intent to distribute, of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); (3) being an illegal alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2); (4) being an illegal alien in possession of ammunition in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2); and (5) illegal re-entry of a previously deported alien into the United States, in violation of 8 U.S.C. § 1326(a). On November 14, 2005, the Defendant filed a motion to suppress any evidence obtained as a result of his "illegal detention and seizure." After hearing, the district court, on January 13, 2006, filed its "Memorandum Opinion and Order Denying Motion to Suppress."

On February 9, 2006, pursuant to a written plea agreement, the Defendant pled guilty to counts 1, 2, and 5 of the indictment, wherein the Defendant reserved his right to appeal the district court's denial of his motion to suppress. Fed. R. Crim. P. 11(a)(2). On February 27, 2006, the Defendant filed a "Motion to Reconsider Court's Denial of Motion to Suppress and Withdraw Guilty Plea," citing a case decided by the Tenth Circuit very shortly <u>after</u> the district court's denial of his Motion to Suppress. On April 11, 2006, the district court denied Defendant's Motion to Reconsider "in its entirety." On April 20, 2006, the district court sentenced the Defendant to imprisonment for 147 months. On April 28, 2006, the Defendant filed a timely notice of appeal.

The facts out of which the present controversy arises are not really in dispute. Trooper Gates, a Wyoming State Trooper, was the only witness at the suppression hearing. On May 27, 2005, at about 10:41 p.m.,[1] the Trooper heard a Rocks Springs police dispatcher issue a REDDI (Report Every Drunk Driver Immediately) report concerning a "suspected" drunk driver occurring within the Trooper's general work area.

_____

[1] The "times" mentioned in this order and judgment come from the video/audio tape of the stop and the events thereafter occurring at the scene of the stop.

2

The report related to the driver of a white (sometimes referred to as a silver) Jeep Cherokee with a California license plate, and gave the exact numbers on the plate. The Trooper shortly thereafter saw a white Jeep Cherokee with a California license plate bearing a number slightly different, though similar, to the one previously given him by the dispatcher. The Trooper proceeded to follow the vehicle and observed no erratic driving on the part of the driver of the Jeep Cherokee. However, the Trooper called the dispatcher and asked her to check out the license plate number that he had seen on the Jeep, and after a minute or so, was told that the license number he had given the dispatcher had expired. The Trooper then stopped the Jeep at about 10:48 p.m.

As stated, the foregoing events occurred after 10 p.m. After the driver of the Jeep stopped in a rather well-lit parking lot of an adjacent motel, the Trooper stopped his vehicle immediately behind the Cherokee, turned on his "search lights," and got out of his vehicle. As he was going forward towards the driver's side of the Jeep, he saw, for the first time, what appeared to be a temporary registration paper in the upper left portion of the back window. It later developed that the window was both "tinted and dirty."

The Trooper then approached the driver of the Jeep, who was the Defendant, and asked for his driver's license, registration papers, and proof of insurance, and in so doing explained to the Defendant he had been stopped for an expired license plate and that he, the Trooper, had not been able to see before the stop what appeared to be a registration paper affixed to the back window of the Cherokee. The Defendant gave the Trooper his driver's license, and then the two of them walked back to the rear window, where the

3

Defendant, with some difficulty, "wiped off" the dust or grime on the window so as to make the temporary registration more visible. In this regard, the Trooper testified at the suppression hearing that at that point in time he knew he could issue a citation for "temporary registration obscured" under Wyo. Stat. § 31-4-101.[2]

The Trooper and the Defendant then returned to the Cherokee and the Defendant produced his registration papers. After that, the Trooper returned to his patrol car and asked the dispatcher to run a "check" on the Defendant's driver's license. The dispatcher, after a few moments, advised the Trooper that the driver's license had been suspended and that there was an active extraditable warrant on the Defendant from Garden City, Kansas. Shortly thereafter, at about 11:22 p.m., the Trooper arrested the Defendant and later testified that for his own safety he patted down the Defendant and found ammunition and methamphetamine on his person. An ensuing search of the Defendant's car revealed a plastic bag containing 169.9 grams of methamphetamine and a .357 magnum firearm lodged between the front passenger seat and the center console of the Jeep. The ammunition previously taken from the Defendant was usable in the firearm. Also found on the Defendant was $1,629.00 in cash.

---

[2] Wyo. Stat. § 31-4-101 reads as follows:
> (a) No person shall knowingly operate, nor shall an owner knowingly permit to be operated, upon any highway any vehicle:
>
> * * *
>
> (iii) With license plates, validation stickers or license permits altered, mutilated or obscured so as to prevent the license plate number from being easily read.

4

On appeal, Defendant argues that the district court erred in denying his motion to suppress and, in sentencing, finding that the drug quantity in question was between 500 grams and 1.5 kilograms of methamphetamine.

## I. Motion to Suppress

At the hearing on the Defendant's motion to suppress, the Defendant conceded that the initial stop of the vehicle he was driving was lawful and did not violate the Fourth Amendment's prohibition of "unreasonable searches and seizures." However, the Defendant did argue that his "continuing detention" after the Trooper saw the temporary registration affixed to the inside of the rear window of the Defendant's vehicle did violate the Fourth Amendment, and that the methamphetamine and ammunition later found in the search of his person, as well as the additional methamphetamine and the firearm found inside his car, together with all statements made by him to the police after his arrest, should be suppressed, and not used at trial. In thus arguing, the Defendant cited, and relied heavily on, *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994), and our unpublished opinion in *United States v. Pina-Aboite*, 109 Fed. Appx. 227 (10th Cir. 2004). In *McSwain*, 29 F.3d at 561, we spoke as follows:

> Trooper Avery stopped Mr. McSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Once Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. Trooper Avery's further detention of the vehicle to question Mr. McSwain about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification.

The district court, in its order denying the Defendant's motion to suppress, found that there were facts in the present case which were different than the facts in *McSwain* and *Pina-Aboite* and that these cases did not control the instant case. We agree.

The starting point in our discussion is that the Trooper saw <u>nothing</u> in the rear window of the Cherokee until after he had determined that its license plates were expired and stopped the Cherokee. Only after he had stopped the Cherokee in a well-lit parking lot of a motel and had turned on his own search lights did he first see anything affixed to the rear window of the Cherokee. At that point in time he did not examine the paper he had just noticed, but proceeded directly to the driver's side of the Cherokee and engaged in conversation with the Defendant. The Defendant and the Trooper then went back to examine the "piece of paper" more clearly. It was only after the Defendant, *sua sponte*, so to speak, wiped the foreign particles off the window that the registration became apparent to the Trooper. In this regard, it would appear that it was later determined that the temporary registration had not expired, and was still valid. In connection therewith, the Trooper testified that as the Defendant was wiping the dust and grime off the windshield, it occurred to him that the Defendant had perhaps violated the Wyoming statute. As above mentioned, in this regard, the district court concluded that the Trooper did have a reasonable articulable suspicion that the Defendant had violated the Wyoming statute. *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir. 1995). We agree, and like the district court, we reject the suggestion that the

6

Trooper knew the registration was valid when he first exited his vehicle and went forward to engage in conversation with the Defendant.

Shortly after the district court denied Defendant's motion to suppress, the Defendant filed in the district court a motion to reconsider its ruling, arguing that *U.S. v. Edgerton*, 438 F.3d 1043 (10th Cir.), decided on February 22, 2006, dictated a grant of his motion to suppress. That case did involve a Kansas statute similar to the Wyoming statute involved in the present case. After hearing, the district court denied that motion, noting that in *Edgerton*, there was <u>no</u> evidence that the temporary registration was in any way "obscured," except by the fortuitous fact that is was nighttime. In the instant case, of course, there is evidence that the temporary registration was "obscured," at least to some degree, by foreign matter on the rear windshield. In our view, *Edgerton* is distinguishable from the present case and does not compel a granting of Defendant's motion to suppress.

*U.S. v. Ledesma*, 447 F.3d 1307 (10th Cir.) decided on May 19, 2006, subsequent to the filing of the notice of appeal in the instant case, sheds light on the present controversy. In that case we ruled that displaying a temporary tag behind a heavily tinted rear window violated a Kansas statute requiring that license plates appear "in a place and position to be clearly visible...." We recognize that the rear window in the present case was only "lightly tinted," and not "heavily tinted," as it was in *Ledesma*. However, in the instant case there was foreign matter on the rear window of the defendant's car, which was not the case in *Ledesma*. In *Ledesma*, we reviewed the applicable Tenth Circuit law on the general subject of "obscured" license tags that were not "clearly visible" and

7

concluded that the "stop" and the ensuing short detention in that case was "justified by reasonable suspicion under the standards set forth in *Terry v. Ohio*, 392 US 1." We again agree.

## II. Sentencing

The presentence report stated that the amount of methamphetamine involved in the present offense was between 500 grams and 1.5 kilograms, resulting in an offense level of 32. The defendant objected to that recommendation, arguing that only 184 grams of methamphetamine was involved, i.e., the methamphetamine found on his person and in his vehicle at the time of his arrest. In this connection the defendant, during his interrogation by the police, admitted that he had sold, on another occasion, a pound of methamphetamine to one "Jeff Roberts." At sentencing, an evidentiary hearing was held, and a deputy in the local sheriff's office testified that the defendant, after being given his *Miranda* warning, stated, *inter alia*, that he had on one occasion sold someone named Jeff a pound of methamphetamine for $11,000 in Rock Springs, Wyoming and that he had on several other occasions sold methamphetamine to Jeff.[3]

It was on this general state of the record that the district court followed the recommendation of the PSR and set defendant's base offense level at 32 because his "relevant conduct" involved sales to Jeff of between 500 grams and 1.5 kilograms of methamphetamine.

---

[3] It should be mentioned that in his post-arrest interview by officers at the police station, that defendant in response to a question as to "what he does for work?" reportedly replied "drugs."

On appeal, defendant argues that the "hearsay" contained in the PSR denied him his "confrontational rights" guaranteed him by the Sixth Amendment. We recently rejected that argument in *U.S. v. Bustamante*, 454 F.3d 1200 (10th Cir. 2006) where we held that the consideration by a district court of hearsay evidence at sentencing did not violate a defendant's Sixth Amendment rights under the Confrontation Clause.

In this same connection, we would also note that at sentencing, a deputy of the Sheriff's office testified as to defendant's admission of selling a pound of methamphetamine to Jeff Roberts for $11,000, and was not cross-examined.

Judgment affirmed.

ENTERED FOR THE COURT


Robert H. McWilliams
Senior Circuit Judge