O’BRIEN, J.,
concurring.
Jose Luis Pena-Montes was convicted, upon his conditional guilty plea,[1] of illegal re-entry of a removed alien. 8 U.S.C. § 1326(a), (b). He complains about the manner by which the government learned of his illegal presence in the United States. That information came to light because he was a passenger in an improperly registered vehicle, which the police stopped for a traffic violation and thought might be stolen. His presumptively innocent presence in the vehicle was soon eclipsed by *1059 his lies to the officers about his identity, which resulted in his arrest for violating New Mexico law — concealing identity from the police.[2] The arrest led to the taking of his fingerprints, which revealed his true identity and his violation of our immigration laws. He sought to have the fingerprints and evidence derived from the fingerprinting process suppressed, arguing it was the product of an illegal detention. Specifically, he claims the officer who stopped the vehicle unconstitutionally detained him by questioning the driver about the vehicle’s registration. The district court properly refused to suppress the evidence, but for the wrong reason. Normally this Court should consider affirming on other grounds, but by its argument in the district court and here, the government has forfeited that remedy.[3] I concur in the majority opinion but write separately to vindicate the arresting officer, who was without fault in this matter.
A traffic stop does not offend the Constitution if it is based upon “an observed traffic violation or ... reasonable articula-ble suspicion that [an actual] traffic or equipment violation has occurred or is occurring.” United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir.1995) (en banc); see also United States v. Winder, 557 F.3d 1129, 1134 (10th Cir.2009). Pena-Montes, quite prudently, does not contest the legitimacy of the initial stop and the events following Officer Hernandez’s initial questioning of the driver afford him no basis for relief.[4] Accordingly, the pivotal issue here is exquisitely narrow — whether this officer could legitimately ask questions of the driver after the traffic stop.
Typically after a traffic stop an officer is permitted to engage in a host of investigatory activities. He may ask the driver to produce a valid driver’s license, vehicle registration and proof of insurance and he may verify the validity of those documents. See United States v. Karam, 496 F.3d 1157, 1161 (10th Cir.2007). For officer safety, he may order the driver and the *1060 passengers to get out of the vehicle. See Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (passengers); Pennsylvania v. Mimms, 434 U.S. 106, 111 & n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (driver).[5] He may also ask the passengers for their identification and run a background check on them. See United States v. Rice, 483 F.3d 1079, 1084 (10th Cir.2007).[6] The officer may “also ask the driver questions about matters both related and unrelated to the purpose of the stop, as long as those questions do not prolong the length of the detention.”[7] Karam, 496 F.3d at 1161. In one form or another the “extend the stop” litmus test has been with us for quite awhile.
In United States v. McSwain, an officer stopped a vehicle with a temporary sticker in the window but without a front or rear license plate. 29 F.3d at 559-60. The officer was unable to read the expiration date on the sticker because it appeared to be covered with reflective tape so he stopped the vehicle to verify the validity of the sticker. As he approached the vehicle on foot the officer determined the temporary sticker to be valid and current. Nevertheless, he required the driver to produce his license and registration and questioned him about the vehicle and his travel plans. We decided the officer’s detention of the vehicle exceeded the scope of the underlying justification for the stop, saying: “[The officer’s] reasonable suspicion regarding the validity of [the driver’s] temporary registration sticker was completely dispelled prior to the time he questioned [the driver] and requested documentation.” Id. at 561 (italic emphasis in original, underline emphasis added.) Stated differently, since there was no reason to further investigate, the stop was unreasonably extended.
Continuing the theme is United States v. Edgerton, 438 F.3d 1043, 1044 (10th Cir.2006).[8] There an initial traffic stop was justified because the officer could not, while driving on the highway at night, read a properly displayed temporary sticker from a distance. But, “[o]nce [the officer] was able to read the Colorado tag and deem it unremarkable, any suspicion that Defendant had violated § 8-133 dissipated because the tag was ... ‘in a place and position to be clearly visible.’ ” Id. at 1051 (Emphasis added). Again, the original indication of a traffic violation was wholly *1061 vitiated so continued investigation unreasonably extended the stop.
Notable is the uniform theme of our cases, underscoring the requirement that the reasons for the initial stop must be completely dispelled in order for subsequent questioning to be unlawful. Sometimes further investigation is warranted. See, e.g., United States v. Eckhart, 569 F.3d 1263, 1273 (10th Cir.2009) (holding a trooper’s request for a driver and passenger’s identification and his questioning of them did not violate the Fourth Amendment because he observed an actual traffic violation after stopping the defendants’ vehicle and thus his reasonable suspicion was not dispelled); United States v. Ledesma, 447 F.3d 1307, 1314 (10th Cir.2006) (holding it was reasonable for a trooper “to issue a written warning, verify [the defendant]^ license and registration information, and ask preliminary questions about travel plans” because the trooper saw the defendant’s registration tag displayed in an unlawful manner, even after he approached the vehicle); United States v. DeGasso, 369 F.3d 1139, 1149 (10th Cir.2004) (upholding a trooper’s detention of a motorist because the lettering on a license plate was not ‘clearly visible,’ as the law required, even though the trooper was able to read the plate as he approached the vehicle). Like the original stop, a new or continuing violation of traffic or equipment laws justifies further investigation and, for that reason, does not unreasonably extend the stop.
When Officer Hernandez saw no license plate on the Yukon (the subject vehicle) he activated his emergency equipment and stopped it. He reported the stop to dispatch and described the vehicle. During this time another officer, Morales, arrived on the scene. They both approached the Yukon, Hernandez on the driver’s side and Morales on the passenger’s side. As Hernandez “approached the vehicle doing [his] initial with [his] flashlight ... [he] was able to observe through the dark tint of the vehicle [window] what appeared to be a temp tag or a dealer tag, that [he] could not make out ... it was inside the window ... the top left side.”[9] (R. Vol. Ill at 7 (emphasis added).) Hernandez’s unrefut-ed testimony was credible to the senses and satisfaction of the district judge. His reason for stopping the Yukon (lack of a valid plate or permit) did not dissipate just because he noticed what might be a permit, which he could not read, taped to the inside of a tinted window.
The majority concludes Hernandez’s investigation should have terminated “when he saw that the vehicle actually had a plate — before he began questioning the vehicle’s occupants.” (Majority Op. at 1055.) It reasons that because Hernandez incorrectly summarized the law regarding dealer plates in his testimony he had no reasonable suspicion the Yukon was not displaying a valid license plate when he saw “what appeared to be a temp tag or a dealer tag.” (R. Vol. Ill at 7.) But that is not exactly what happened. First, the testimony[10] discloses no reason to assume the vehicle was displaying a dealer plate; it was more likely a demonstration or temporary registration permit and Hernandez did not extend the traffic stop based upon a mistake of law. Second, it makes no *1062 difference whether the observed “tag” was a permit or a plate; it was improperly-displayed, permitting the officer to question the driver. I will discuss my concerns in reverse order.
A. The Registration “Tag” Was Not Displayed as New Mexico Law Requires [11]
In New Mexico, all vehicle permits or plates are required to be “clearly visible” or “visible or readable” regardless of whether they are demonstration permits, temporary registration permits, or dealer plates.[12] See N.M. Stat. § 66-3-18(A) (“The registration plate [including a ‘dealer plate’] shall be attached to the rear of the vehicle for which it is issued ... securely fastened ... not less than twelve inches from the ground ... in a place and position so as to be clearly visible ... and in a condition to be clearly legible.”) and § 66-3-18(B) (“A demonstration or temporary permit shall be firmly affixed to the left rear window of the vehicle ... unless [it] presents a safety hazard or ... is not visible or readable from that position, in which case, [it] shall be displayed in such a matter that is clearly visible from the rear or left side of the vehicle.”).
Here the “tag” was not clearly visible and certainly not legible or readable even at close range with the aid of a flashlight. This was a violation of New Mexico law. N.M. Stat. § 66-3-18(A), (B). Moreover, a displayed registration plate must also display a current validating sticker.[13] N.M. Stat. § 66-3-18(C). If the validating sticker was not visible and legible that requirement was not met.
Since Hernandez could not make out “what appeared to be a temp tag or a dealer tag” the tag was not displayed as the law required and he was justified in investigating further by questioning the driver. The reason for the stop — no valid license plate or permit — never dissipated in that Hernandez saw no evidence of a current, conforming tag of any sort.[14] But *1063 even if his discovery of some kind of plate or permit, valid or not, must end the inquiry as to whether the purpose of the stop has been satisfied (ignoring the requirements of the statutes that the plate or permit be visible and legible or readable), then the illegible or unreadable “tag” supplied a new and continuing “observed traffic violation or ... reasonable articulable suspicion that [an actual] traffic or equipment violation has occurred or is occurring.” Botero-Ospina, 71 F.3d at 787, to wit, a violation of N.M. Stat. § 66-3-18. Either way Hernandez was justified in questioning the driver.
B. The “Tag” in the Rear Window Was a Permit, Not a Plate, and Hernandez Did Not Err in His Original Assessment or in His Testimony
New Mexico has a host of vehicle registration plates[15] and permits. See N.M. Stat. § 66-3-6. Pertinent here is a dealer plate, which is “a unique plate issued to the dealer....”[16] N.M. Stat. § 66-3-401(A). It is “issued for a specific vehicle in the dealer’s inventory.” Id. A dealer vehicle so registered and properly displaying a dealer plate may be “operated or moved upon the highways for any purpose,” Id., except for work or service vehicles defined as “parts or delivery vehicle[s], ... vehicle[s] used to tow [other] vehicle[s], .. courtesy shuttle[s] or vehicle[s] loaned to customers ...” N.M. Stat. § 66-3-401(B). Such plates are issued to a dealer in limited numbers. N.M. Stat. § 66-3-402.
Temporary registration permits are also issued to dealers. They are valid for thirty days and are issued to a person who purchases a vehicle from a dealer. N.M. Stat. § 66-3-6(E). And demonstration permits are issued to dealers. They “shall be used to allow the operation of vehicles for the limited purposes of testing, demonstrating or preparing a vehicle for sale or lease. [They] may not be used on work or service vehicles ... that are owned, used or held in inventory by a dealer.... [They] shall be valid for as long as the vehicle is held in the dealer’s inventory.” N.M. Stat. § 66-3-6(F). They must name the dealer to whom the permit is issued and display a unique number assigned by the department.[17] Id.
Though the transcript of the suppression hearing suggests some ambiguity in terminology, Hernandez’s testimony did not reveal an error of law regarding the “tag” he observed in the tinted window, but could not read. While permits and plates are different under New Mexico law, the attorneys seemed to conflate the terms. They referred to the “tag” in the window as a plate and the government cited the dealer plate statute (§ 66-3-401) in support of its arguments.[18] Hernandez may have been confused about the difference since he used the term “tag,” but that is unlikely. *1064 The record pretty clearly establishes the paper tag taped to the rear window of the Yukon was either a temporary permit or a demonstration permit, not a metal dealer plate, which would be attached to the vehicle in the license bracket. Several things lead to that conclusion. Hernandez never referred to the “tag” as a plate (although he did not correct the attorneys when they asked him about the “plate”). Since there is no temporary plate available in New Mexico, Hernandez’s reference to a “temp tag” or “dealer tag” most likely referred to a temporary permit or a demonstration permit. Temporary and demonstration permits are required to be “firmly affixed to the left rear window of the vehicle ... unless [they] present! ] a safety hazard or ... [are] not visible or readable from that position, in which case [they] shall be displayed in such a manner that is clearly visible from the rear or left side of the vehicle.” N.M. Stat. § 66-3-18(B). That is where the “tag” was located in the Yukon. Plates, on the other hand, “shall be attached to the rear of the vehicle for which it is issued.” N.M. Stat. § 66-3-18(A).
Hernandez’s testimony, reflecting his understanding of New Mexico law, was entirely consistent with the statutory provisions relating to demonstration permits.
Q. ... [W]ith regard to these dealer tags, do you have an understanding as to what the purpose of that tag is? And if so, can you describe it for me?
A. The dealer tags are for auto dealerships, and based upon the operations of the auto dealership, their sole purpose is for demonstrating the vehicle or for sales of the vehicle. Usually, it’s for test driving purposes or a demo vehicle.
(R. Vol. III at 7-8.) If, as a fair reading of the entire transcript suggests, he was speaking of demonstration permits, not dealer plates, he was entirely correct. Moreover, he did not testify that the use of demonstration permits was only allowed during business hours. Rather he testified as to his understanding of how the permits were generally used.
Q. In your experience, do you typically — would you typically see that type of tag in use during the daytime?
A. During the daytime, yes, as in from what you would call bank hours, eight to five. Usually not seen driven around for just[,] I guess[,] owner purposes.
(Id. at 8.) Any error of law on Hernandez’s part derives from the contrived notion that he was talking about dealer plates. And his opinion about the use of demonstration permits, based upon experience and common sense, was legitimate. At most it was an error of fact, which as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a traffic stop. See United States v. Salinas-Cano, 959 F.2d 861, 865-66 (10th Cir.1992).

. Pena-Montes properly reserved the right to appeal from the denial of his motion to suppress evidence. [R. Vol. I, Doc. 37 at 3]

. Concealing identity consists of concealing one’s true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United states or of this state.
N.M. Stat. § 30-22-3.

. See infra n. 16.

. Assuming Hernandez was justified in approaching the vehicle and speaking with the driver about his improper display of the vehicle's registration, he was justified in requesting information from the driver, as he did. He described it in this way:
I approached the driver. I introduced myself, and why I stopped the vehicle. At that time, the driver was identified as Jeremy Crain. At that time, I asked Mr. Crain for his driver’s license and proper documentation for the vehicle as in vehicle registration and insurance for the vehicle, at which time he stated he
owned the vehicle, gave me his driver's license, and stated that he didn’t have any paperwork on the vehicle, so there was no bill of sale. There was no registration. There was no insurance. There was no paperwork on the vehicle.
(R. Vol. Ill at 8.) Hernandez found the lack of any paperwork regarding ownership of the vehicle to be suspicious and began a more probing investigation, which included reporting the vehicle identification number and checking if the vehicle was reported stolen. When he was told there was a handgun in the vehicle he ordered the occupants to get out and produce identification.
It was at this time that Pena-Montes began lying to the officers about his identity. His story did not make sense and the information he provided could not be confirmed. Ultimately, his lies led to his arrest. Because the information he challenges — his identity' — was obtained "as a part of a routine booking or processing procedure” it is not subject to the exclusionary rule. United States v. Olivares-Rangel, 458 F.3d 1104, 1112-16 (10th Cir.2006).

. See also Arizona v. Johnson, - U.S. -, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009) (holding an officer may order a passenger to get out of a car during a traffic stop and may frisk a passenger for weapons if the officer reasonably suspects the passenger is armed and dangerous).

. "Police may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.” Arizona v. Gant, - U.S. -, 129 S.Ct. 1710, 1723, 173 L.Ed.2d 485 (2009). That holding does not directly bear on the issue here, but it may be a harbinger of something more.

. To extend a stop beyond the time necessary to investigate the circumstances justifying the stop and issue a citation, an officer must have reasonable articulable suspicion of other illegal activity. United States v. Edgerton, 438 F.3d 1043, 1047 (10th Cir.2006); United States v. McSwain, 29 F.3d 558, 561 (10th Cir.1994).

.The seminal issue in this case is whether the unobscured temporary Colorado registration tag, displayed consistent with Colorado law in the rear window of Defendant's vehicle but illegible from a distance due to nighttime conditions, constituted a violation of Kansas law, thereby justifying Defendant’s continuing detention-a detention which led to Defendant’s consent to search and discovery of the contraband.
Edgerton, 438 F.3d at 1045.

. Compare Edgerton where the testimony was as follows:
"Q. And when were you first able to determine that it appeared to be a valid temporary tag in the back window of the vehicle?
A. As I approached the vehicle I could see it with my lights and my flashlight, I could see the tag.”
Edgerton, 438 F.3d at 1045.

. The government's arguments are a different matter. See infra n. 16.

. As did Officer Hernandez, I refer to the plate or permit (whichever it was) attached to the inside left rear window as a “tag.”

. The majority assumes the tag in the window was a dealer plate because the parties and the district court used that language. The assumption is unwarranted if the totality of the transcript of the suppression hearing is considered, rather than isolated comments. Hernandez stated he was unable to identify the permit. Hernandez never testified he observed a "dealer plate” in the Yukon’s rear window, rather he repeatedly referred to it as a "temp tag,” a “dealer tag,” or a "demonstration plate.” (See, e.g., R. Vol. III at 7, 12.) That confusion prompted extensive questions about dealer plates. But, regardless of the tag’s title, its display violated New Mexico law in that it was not clearly visible.

. Defined to be: "the tab or sticker issued by the division to signify, upon a registration plate, renewed registration.” N.M. Stat. § 66-1-4.19(A). "The department upon registering a vehicle shall issue a registration plate or a validating sticker to the owner of the vehicle. The validating sticker may be designed and required to be placed on the registration plate or elsewhere on the vehicle as prescribed by the department.” N.M. Stat. § 66-3-14(A). "Succeeding registration renewals of the registration plate issued under Section 66-3-14 NMSA 1978 shall cause the division to issue a validating sticker only....” N.M. Stat. 66-3-17(A).

.Even if that tag was a legitimate form of registration (a fact not supported by the record — the driver was cited for improper registration), Hernandez’s testimony unquestionably states the tag was illegible. There is no evidence he was able to recognize the tag, read the tag, or ascertain if it was indeed valid. Restricting an officer from questioning a driver of a vehicle with no obvious form of current registration after seeing only an unidentifiable tag of some sort taped in the rear window is incomprehensible. In New Mexico
Any peace officer may, upon discovering that the registration plate of any vehicle is illegible because of wear or damage or oth *1063 er cause, issue a citation to the owner or operator of the vehicle. The citation shall provide that the owner shall, within thirty days from the date of the citation, apply for and obtain a duplicate or replacement plate from the division.
N.M. Stat. § 66-3-17(C).

."[T]he department upon registering a vehicle shall issue a registration plate ... [which] shall have a background of reflective material such that the registration number assigned to the vehicle is plainly legible from a distance of one hundred feet at night.” N.M. Stat. § 66-3-14(A), (B).

. Presumably like the metal license plates, which adorn most cars.

. Presumably they are cardboard or paper because "[t]he department may authorize in writing dealers ... to print and use at their own cost demonstration permits....” N.M. Stat. § 66-3-6(G).

. The government argued a possible misuse of a dealer plate, along with other factors, supplied reasonable suspicion for Hernandez to question the driver. It is now stuck with the detritus of its litigation strategy.