**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 18 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL CURTIS WILLIAMS,

Defendant - Appellant.

No. 04-7065

---

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. CR 04-06-WH)**

---

Robert L. Wyatt IV, Wyatt Law Office, Oklahoma City, Oklahoma, (Alecia Felton George, George Law Office, Mustang, Oklahoma, with him on the brief) for Defendant-Appellant.

D. Michael Littlefield, Assistant United States Attorney, (Sheldon J. Sperling, United States Attorney, with him on the brief) Muskogee, Oklahoma, for Plaintiff-Appellee.

---

Before **HENRY**, Circuit Judge, **LUCERO**, Circuit Judge, and **BRACK,**[*] District Judge.

**BRACK**, District Judge.

---

[*] The Honorable Robert C. Brack, District Judge, United States District Court for the District of New Mexico, sitting by designation.

Defendant-Appellee Michael Curtis Williams appeals the district court's denial of his motion to suppress evidence based on violations of the Fourth Amendment in connection with the search of his vehicle and the scope of his detention. The district court found that the search and detention were justified because there was an objectively reasonable suspicion of illegal activity. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Factual Background

On January 7, 2004, Mr. Williams was driving eastbound on Interstate 40 when Oklahoma Highway Patrol Trooper Cody Hyde observed Mr. Williams driving without a seat belt and violating the posted speed limit. Mr. Williams was traveling with three other individuals. Mr. Williams exited the interstate and was pulled over shortly thereafter. Trooper Hyde asked Mr. Williams to step out of the car and join him in the patrol car.

Mr. Williams was extremely nervous throughout the encounter. Mr. Williams' hands were shaking, his voice was cracking, he could not sit still, and his heart was beating so fast that Trooper Hyde was able to see his chest jerk. Mr. Williams admitted to Trooper Hyde that he had exited the interstate to avoid the traffic stop. Trooper Hyde asked Mr. Williams where he and his passengers had been and where they were going. Mr. Williams identified all of the passengers in the van, although

he knew one passenger only as "Larry." Mr. Williams stated that they had been visiting family in Shawnee, Oklahoma for a few days and that they were on their way home to Tennessee.

Trooper Hyde then left Mr. Williams in the patrol car and went to speak with the passengers in the vehicle. The passenger identified as Mr. Williams' girlfriend and the passenger known as "Larry" (later identified as Lawrence Louis Gutierrez, Jr. and charged as a co-defendant) indicated that they had been to Phoenix, Arizona for approximately one week to pick up "Larry," and that they were on their way to Tennessee.

Trooper Hyde returned to the patrol car and again questioned Mr. Williams about his travel history. Mr. Williams stated that he might have picked up "Larry" in Oklahoma. Mr. Williams continued to appear extremely nervous and was breathing rapidly. Trooper Hyde gave Mr. Williams his insurance card and told him he was free to leave. Trooper Hyde, however, asked some additional questions as Mr. Williams exited the patrol car. According to Trooper Hyde, Mr. Williams appeared as if he were about to run.

Trooper Hyde asked for consent to perform a canine sniff on the van and Mr. Williams refused. Shortly thereafter, Trooper Hyde ordered the passengers out of the vehicle and Mr. Williams back into the patrol car. A canine sniff was performed on the exterior of Mr. Williams' vehicle. The canine alerted to the presence of drugs

in the vehicle. Trooper Hyde then searched the vehicle and discovered a gun and a bag of methamphetamine hidden in the interior of the vehicle. Mr. Williams and his passengers were arrested.

Mr. Williams was indicted for possession with intent to distribute over 500 grams of methamphetamine, carrying a firearm in relation to a drug trafficking crime, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), 18 U.S.C. §§ 2, 922(g)(1), 924(c)(1)(A)(i), and (c)(1)(C)(i).

Mr. Williams filed a motion to suppress the evidence, which was referred to a United States magistrate judge. After holding an evidentiary hearing on February 12, 2004, the magistrate judge recommended that the motion be denied. Mr. Williams filed timely objections. On March 19, 2004, the district judge issued an order adopting the magistrate judge's recommendation and denying the motion to suppress.

Mr. Williams challenges the district court's determination that the detention was justified; he does not challenge the validity of the initial stop. The Government does not argue that Mr. Williams consented to the search of his vehicle.

## Discussion

When reviewing an order denying a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous, and view the evidence in

the light most favorable to the district court's ruling. *United States v. Zabalza*, 346 F.3d 1255, 1257-1258 (10th Cir. 2003). The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir 2004). The ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewed de novo. *Zabalza*, 346 F.3d at 1258.

The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. CONST. amend. IV. Its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A routine traffic stop constitutes an investigative detention and is examined under the principles announced in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

The first inquiry under *Terry* is whether the stop was justified at its inception. "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). Mr. Williams does not challenge the validity of the initial stop. Trooper Hyde was justified in stopping Mr. Williams because he observed that Williams was speeding and not wearing his seatbelt.

The second Terry inquiry is whether the officer's conduct during the detention was reasonably related in scope to the circumstances which justified the initial stop. *Terry*, 392 U.S. at 20. An officer may detain a motorist for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning. *See United States v. Galindo-Gonzales*, 142 F.3d 1217, 1221 (10th Cir. 1998). It is undisputed that Mr. Williams did not consent to any search. The question is whether Trooper Hyde had an objectively reasonable and articulable suspicion of illegal activity that would justify prolonging the detention. *See United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2002) (recognizing that the refusal to consent to search cannot be part of the reasonable suspicion calculus, but rather "our analysis turns on whether sufficient and specific articulable facts existed which, when considered together, provided the officer with reasonable suspicion of criminal activity before he asked for consent to search the vehicle").

The district court relied on the following factual findings to support its conclusion that the detention was justified by reasonable suspicion. Mr. Williams was extremely nervous during his encounter with Trooper Hyde; his hands were shaking, his voice was cracking, he could not sit still, and his heart was beating so fast that Trooper Hyde was able to see his chest jerk. Mr. Williams admitted that he exited the interstate to avoid the traffic stop. Mr. Williams and his passengers gave

inconsistent stories when asked where they were coming from and how long they had been together. When Mr. Williams exited the patrol car, Mr. Williams appeared as if he were about to run. Considered in the light most favorable to the district court's ruling, these findings of fact are not clearly erroneous.

Mr. Williams argues that, when viewed one-by-one, the factors did not give rise to reasonable suspicion. The Supreme Court has expressly rejected this sort of "divide-and-conquer" analysis; a court may not evaluate and reject each factor in isolation. *United States v. Arvizu*, 534 U.S. at 274. When determining whether there was reasonable suspicion, a court must look to the "totality of the circumstances" to see whether the officer had a "particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273.

The fact that Mr. Williams offered explanations for the suspicious circumstances is immaterial. A law enforcement officer may rely upon his training and experience without inquiring of a defendant as to innocent explanations. *See Arvizu*, 534 U.S. at 273. A court should accord deference to an officer's ability to distinguish between innocent and suspicious actions. *United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003). Although reasonable suspicion may not be based upon a refusal of consent to a search, *see Williams*, 271 F.3d at 1268, the objective facts known to Trooper Hyde support reasonable suspicion prior to the refusal. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Although refusal to consent may not augment factors supporting reasonable suspicion, neither does it negate those observations made prior to the refusal.

During the lawful detention, Trooper Hyde retrieved a trained canine from his police car and conducted a canine search on the exterior of Williams' vehicle. A canine sniff on the exterior of a vehicle during a lawful traffic stop does not implicate legitimate privacy interests. *Illinois v. Caballes*, ___ U.S. ___, 125 S.Ct. 834, 838 (2005). The canine alerted to the presence of drugs in the vehicle. A canine alert gives rise to probable cause to search a vehicle. *United States v. Rosborough*, 366 F.3d 1145, 1152 (10th Cir. 2004). The search revealed the methamphetamine and the gun.

Based on the totality of the circumstances as found by the district court, Trooper Hyde had a particularized and objective basis for suspecting legal wrongdoing. Because the stop and detention were based upon reasonable suspicion, and the canine sniff provided probable cause for the search, they did not violate the Fourth Amendment.

## Conclusion

We AFFIRM the decision of the district court.