**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHARLES CASTANEDA,

Defendant-Appellant.

No. 09-1080
(D.C. No. 1:07-CR-00185-WYD-4)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

A jury found Charles Castaneda guilty of several cocaine-related offenses, including possession with intent to distribute cocaine. Prior to his trial, the district court denied his motion to suppress evidence seized during a traffic stop. He raises two claims on appeal: error in denial of the motion to suppress and

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

insufficient evidence supporting his conviction for possession with intent to distribute cocaine. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

*Factual Background*

Mr. Castaneda was indicted as a result of a multi-agency task force (Task Force) investigation originally focused on two men suspected of crack-cocaine trafficking in the Denver area, one of whom was Dante Butler. At Mr. Castaneda's trial, Mr. Butler testified that he began buying cocaine from Mr. Castaneda in about 2003. By 2006, Mr. Castaneda was Mr. Butler's primary source for cocaine, and Mr. Butler was purchasing one or two kilograms of cocaine from him, one or two times per week, at a price of up to $17,000 per kilo. Mr. Butler cooked the cocaine he bought from Mr. Castaneda into crack and resold it to his own customers.

The Task Force began wiretapping Mr. Butler's cell phone in early May 2006. It also set up surveillance teams to follow up on leads from the recorded calls. Throughout that month the Task Force intercepted calls between Mr. Butler and another man, who they eventually identified through surveillance as Mr. Castaneda. Mr. Butler and Mr. Castaneda used coded language in their telephone conversations. In his testimony, Mr. Butler explained the terms they used as they related to cocaine transactions. Mr. Butler's practice was to call Mr. Castaneda when he wanted to buy cocaine and Mr. Castaneda would deliver the drugs to Mr. Butler's house. On more than one occasion, Task Force officers

watching Mr. Castaneda observed him making frequent turns, stopping, and reversing direction, indicting to the officers that Mr. Castaneda was attempting to determine if he was being followed.

Based on their conversations during intercepted calls, the Task Force expected Mr. Castaneda to deliver cocaine to Mr. Butler's house on May 21 and May 27. On May 21, Task Force officers observed Mr. Castaneda driving down Mr. Butler's street, entering his house, and leaving about 20 minutes later. On May 27, Task Force officers saw Mr. Castaneda leave his own house in a red Ford Taurus driven by his wife, enter Mr. Butler's house carrying a dark-colored backpack, and leave the house 15 minutes later. Upon leaving, Mr. Castaneda's wife was carrying a backpack and Mr. Castaneda and Mr. Butler shook hands. Mr. Castaneda and his wife then drove away in the red Taurus, returned to his house, and Mr. Castaneda removed a backpack from the trunk of the car and took it inside.

Mr. Butler testified that he called Mr. Castaneda again on May 31, asking to buy a half kilo of cocaine to be delivered to his house. This half-kilo order wasn't typical because Mr. Butler usually bought at least a kilo at a time from Mr. Castaneda. Intercepting that call, the Task Force began surveillance at Mr. Castaneda's house. He put a black backpack in the trunk of the red Taurus, then he and his wife left in that car, with his wife driving. A Task Force officer contacted Denver Police Officer Bechthold, requesting that he look out for the red

-3-

Taurus and stop the car if he had independent reasonable suspicion to do so.

When Officer Bechthold observed the red Taurus go through a red light, he pulled

the car over and approached the driver. When she was unable to produce a

driver's license, registration, or valid proof of insurance, Officer Bechthold and

his partner, Officer Bowser, decided to impound the car.

Officer Bowser searched the car and found a backpack in the trunk. Inside

the backpack he found what he believed to be cocaine packaged into a hard unit.

He testified that this "brick" form of packaging was consistent with his

observations of how narcotics are packaged. Officer Bowser turned the backpack

and its contents over to Detective Stackhouse, a Task Force officer. Detective

Stackhouse weighed the evidence, which he described as a compressed, white,

powdery substance, and determined that it was approximately half a kilo. At

Mr. Castaneda's trial, the government introduced this evidence in support of the

charge of possession with intent to distribute cocaine on May 31, 2006.

### *Discussion*

### *Denial of Motion to Suppress*

Mr. Castaneda first contends that the district court erred in denying his

motion to suppress the evidence found in the backpack inside the trunk of the red

Taurus.

> When reviewing an order denying a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous, and view the evidence in the light most favorable to the

district court's ruling. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. The ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewed de novo.

*United States v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005) (citations omitted). The district court found three independent bases to support its decision to deny Mr. Castaneda's motion to suppress: (1) the Task Force officer who requested Officers Bechthold and Bowser to stop the red Taurus had probable cause to stop and search the car, and his probable cause was imputed to Officers Bechthold and Bowser; (2) the search was appropriate in order to inventory the contents of the properly impounded car; and (3) there was probable cause to search the car based on an alert to the presence of narcotics by a drug-detection dog. We need not address all of these conclusions because we agree with the district court that the canine alert provided probable cause to search the trunk of the car.

According to evidence presented at the suppression hearing, once the officers decided to impound the red Taurus, the driver got out of the car without incident. Officer Bowser twice asked the passenger, who he later identified as Mr. Castaneda, to exit the car, but he remained seated and put his hand on his front pants pocket. When Officer Bowser physically pulled him out of the car, Mr. Castaneda tried to push past the officer and break away from his control. Holding onto him, Officer Bowser explained to Mr. Castaneda that he was going

to pat him down for weapons. But Mr. Castaneda's behavior remained tense and uncooperative, like he was going to run or fight, so Officer Bowser put him in handcuffs. After Officer Bowser again explained the necessity of a pat down search, Mr. Castaneda told him that the lump in his pocket was just money, that it wasn't his, and that it was just business. While patting him down, Officer Bowser pulled a plastic bag with a large stack of money out of Mr. Castaneda's pocket. At that point the officers decided to call a canine unit to perform a dog sniff on the red Taurus. A drug-detection dog arrived and, while sniffing only the exterior of the car, alerted to the presence of narcotics at the passenger side door and by the trunk. Mr. Castaneda asserts that the canine sniff was unreasonable because it was based on an unlawful search of his pocket. He argues the pocket search was unlawful because it went beyond the scope of a pat-down necessary to conclude that he did not have a weapon.

The district court did not err in denying Mr. Castaneda's motion to suppress because "dog sniffs are not 'searches' within the meaning of the Fourth Amendment." *United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003). As the Supreme Court has explained, "any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that *only* reveals the possession of contraband compromises no legitimate privacy interest." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quotation omitted). Therefore, "[a] canine sniff on the exterior of a vehicle during a lawful traffic stop does not

implicate legitimate privacy interests." *Williams*, 403 F.3d at 1207. But an officer may not prolong a traffic stop, in order to perform a canine sniff, beyond the time reasonably justified by the circumstances of the initial stop, unless he has objectively reasonable and articulable suspicion of illegal activity. *See id.* at 1206.

Mr. Castaneda does not challenge the validity of the initial traffic stop or his continued detention awaiting arrival of the canine officer. We construe his argument to be that, absent the fruit of an illegal search of his pocket, the officers lacked reasonable suspicion to justify a dog sniff. But the officers were not required to base their decision to use a drug-detection dog to sniff the car on a reasonable suspicion of illegal activity. *See Caballes*, 543 U.S. at 407, 410 (holding reasonable suspicion not required to justify using drug-detection dog sniff during legitimate traffic stop). The canine alert gave the officers probable cause to search the car. *See Williams*, 403 F.3d at 1207. Thus, we conclude that the district court did not err in denying Mr. Castaneda's motion to suppress.

### *Sufficiency of Evidence of Possession of Cocaine*

During Mr. Castaneda's trial the district court granted his motion to exclude the government's expert testimony that, based on chemical analysis, the substance seized from the trunk of the red Taurus on May 31, 2006, was cocaine. Mr. Castaneda argues that, without this chemical analysis, there was insufficient evidence to support his conviction for possession with intent to distribute cocaine.

"We review the sufficiency of the evidence de novo, asking only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Roach*, 582 F.3d 1192, 1205 (10th Cir. 2009) (quotation omitted), *cert. denied*, 2010 WL 155222 (2010).

Mr. Castaneda argues that the non-scientific evidence presented at his trial was insufficient to permit a jury to conclude that he possessed cocaine on May 31, 2006, as charged in the indictment.[1] He relies on *United States v. Hall*, 473 F.3d 1295, 1307-09 (10th Cir. 2007), in which we concluded that three recorded telephone calls between the defendant and a customer discussing a planned crack-cocaine transaction on a particular date, followed by surveillance on that day showing the defendant briefly entering the customer's car, was insufficient evidence to support a charge of possession of crack cocaine. But *Hall* is distinguishable because the evidence did not include a seized substance alleged to be crack cocaine. *See id.* at 1307. Here the government presented "an observed substance that a jury can infer to be a narcotic." *Id.* at 1308 (quotation

---

[1] Mr. Castaneda does not contend, nor could he, that the government was required to present scientific evidence that the substance he possessed on May 31 was cocaine. "As long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal." *United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175 (10th Cir. 1990).

omitted).  Taking the evidence presented at Mr. Castaneda's trial, as well as all reasonable inferences therefrom, in the light most favorable to the government, a reasonable jury could conclude beyond a reasonable doubt that the substance seized from the trunk of the red Taurus on May 31, 2006, was cocaine.  *See United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175-76 (10th Cir. 1990) (describing lay testimony and circumstantial evidence relevant to identity of substance as cocaine).  Therefore, Mr. Castaneda has failed to show there was insufficient evidence for a jury to find him guilty beyond a reasonable doubt of possession with intent to distribute cocaine.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge