FILED
United States Court of Appeals
Tenth Circuit

October 22, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

ANGEL SANCHEZ MARTA,

Defendant - Appellee.

No. 10-2016

(D.C. No. CR-09-1243-MCA)

(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **HOLLOWAY**, Circuit Judge, **MELGREN**, District Judge.[**]

Defendant-Appellant Angel Sanchez Marta appeals the district court's

denial of his motion to suppress all evidence and statements made during his

detention on November 1, 2008 by the Dona Ana Sheriff's Department. Marta

pleaded guilty to one count of felon in possession, in violation of 18 U.S.C. §§

922(g)(1) and 924(g)(2). He was sentenced to fifteen months. Pursuant to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Eric F. Melgren, United States District Judge, District of Kansas, sitting by designation.

Federal Rule of Criminal Procedure 11(a)(2), Marta preserved his right to appeal the denial of his suppression motion. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

In the early morning of November 1, 2008, Dona Ana County Sheriff Deputy Alan Franzoy was conducting patrol duties in a remote desert area northeast of Anthony, New Mexico. Deputy Franzoy drove through a gravel pit, which he knew to be used for target practice, but there were no discarded targets that morning. At approximately 12:40 p.m., Franzoy heard seven or eight gunshots in rapid succession. Franzoy drove back down to the gravel pit to determine where the shots were fired.

As Franzoy drove into the gravel pit, he observed a silver, dual-axle Dodge pickup begin to exit the area. Angel Sanchez Marta was the driver of the vehicle. Deputy Franzoy also noticed that there were some targets, or trash, placed against the northeast side of the gravel pit. Because Franzoy had not noticed the targets earlier in the morning, he "tied it" to the driver of the exiting Dodge pickup. ROA, Vol. III, at 16.

Deputy Franzoy stopped the pickup, exited his vehicle, and approached the Dodge on foot. When he approached, Franzoy's concern was the littering, but he was also concerned about safety. Franzoy asked Marta whether he had been shooting, and Marta responded affirmatively. Deputy Franzoy then asked Marta

2

whether he had left his targets and whether he was going to pick them up. While speaking with Marta, Franzoy observed a gun on the console of the truck.

Marta expressed an interest in retrieving his targets, and Deputy Franzoy believed it would be safer for Marta to be separate from the firearm on the console. When Marta began picking up targets and placing them in the bed of his pickup, Franzoy began to have an "inkling" that he knew Marta. *Id.* at 40-41. Deputy Franzoy took Marta's driver's license and called his dispatcher to check on any wants and warrants. The wants and warrants check took approximately five minutes, and the dispatcher's report on Marta returned "clear." *Id.* at 27. Deputy Franzoy returned Marta's driver's license to him. Franzoy asked Marta whether he had ever been arrested, and Marta responded affirmatively. Upon further questioning, Marta told Deputy Franzoy that he had "sold a gun to someone a couple years ago that [he] shouldn't have." *Id.* at 21. At the time of the incident, Franzoy did not issue any citations and released Marta to return to his home.

The Crime/Incident Report that Deputy Franzoy completed after his encounter reveals that the encounter lasted from 12:59 p.m. until 13:26 p.m. on November 1, 2008. It was not until later in the 27-minute encounter that Deputy Franzoy remembered he had dealt with Marta two years earlier. In August of 2006, Franzoy assisted federal agents in transporting Marta, who at that time was being arrested for firearms offenses. Deputy Franzoy served as a "marked

3

presence" for plainclothes ATF agents who were conducting a firearms "buy bust" in Anthony, New Mexico. *Id.* at 9. Marta was arrested during the "buy bust," and Franzoy transported him in his patrol unit. *Id.* at 10. Franzoy spent approximately 45 minutes in Marta's presence in August 2006, and the two made "small talk" over Marta's involvement in the firearms case. *Id.*

Marta was charged with a single count of felon in possession, 18 U.S.C. §§ 922(g)(1) and 924(g)(2). Marta filed a motion to suppress challenging the initial stop and the length and scope of the stop. An evidentiary hearing was held on August 19, 2009.

During the suppression hearing, the trial court found that Deputy Franzoy testified inconsistently as to when he precisely realized that he knew Marta from their encounter in August, 2006. The trial court found that the deputy variously testified that the remembrance occurred: 1) when Deputy Franzoy saw Marta's name on his identifying document, which was before Franzoy relayed the information to his dispatcher and; 2) not until after Marta's information had already returned as "clear."

However, notwithstanding the inconsistencies, the trial court determined that the deputy projected a straightforward and genuine demeanor. The trial court, therefore, credited Franzoy's explanation that as of the time the deputy asked Marta if he had previously been arrested, Franzoy had already recognized and remembered Marta from the August 2006 encounter. In addition, while

4

Deputy Franzoy's littering investigation ultimately became moot, the trial court determined that Franzoy's testimony was credible that he still intended to issue a littering citation to Marta at the time Marta's information returned "clear." As such, the trial court found that at the time Deputy Franzoy asked Marta if he had ever been arrested, already knowing what the answer to that question was going to be, Marta was still under investigative detention for the littering offense. Finally, the trial court determined that at whatever precise time the deputy remembered his previous encounter, Deputy Franzoy's question did not appreciably lengthen the detention. Marta's motion to suppress was denied.

## II. DISCUSSION

In reviewing a district court's denial of a motion to suppress, "this court accepts the factual findings of the district court, and its determination of witness credibility, unless they are clearly erroneous." *United States v. Chavez*, 534 F.3d 1338, 1343 (10th Cir. 2008) (alteration and quotation omitted). "Ultimately, however, this court must review de novo the reasonableness of the government's action under the Fourth Amendment." *Id.* The government has the burden to prove reasonableness, but we view the evidence in the light most favorable to the government. *Id.*

"A traffic stop is a seizure within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Tibbetts*, 396 F.3d 1132, 1136 (10th Cir. 2005)

5

(quotations omitted).  Because a routine traffic stop is analogous to an investigative detention, we analyze such stops under the principles set forth for investigative detentions in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  *Id.*

"A *Terry* stop, considering the totality of the circumstances, requires a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th Cir. 2006) (quotation omitted).  "The first inquiry under *Terry* is whether the stop was justified at its inception." *United States v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005).

"The second Terry [sic] inquiry is whether the officer's conduct during the detention was reasonably related in scope to the circumstances which justified the initial stop." *Id.*  "As a general rule, once an officer's purpose in a traffic stop based on probable cause or reasonable suspicion is complete, the officer must let the person go." *United States v. Pena-Montes*, 589 F.3d 1048, 1053 (10th Cir. 2009) (quotation omitted); *see also United States v. White*, 584 F.3d 935, 949 (10th Cir. 2009) ("[O]nce an officer returns the driver's license and vehicle registration and issues a warning ticket, he must allow the driver to proceed without further detention or questioning unless the officer has objectively reasonable and articulable suspicion that the driver is engaged in illegal activity.") (quotation omitted).

6

Marta does not contest the district court's determination that the stop was initially justified. Instead, Marta argues that the district court should have made a specific factual finding as to when the investigation into the littering offense ended and the investigation into the felon in possession offense began. Marta contends that the failure to make this finding renders the district court's factual findings clearly erroneous.

We disagree. This is no more complicated than a simple *Terry* stop. In this case, the investigative detention was ongoing into the littering offense. When Deputy Franzoy asked Marta whether he had previously been arrested, Franzoy intended to write Marta a citation but had not yet done so. Because the purpose of the stop was not complete, Marta was not free to leave.

Thus, the appropriate question is whether the deputy exceeded the permissible scope of the stop when he asked Marta whether he had previously been arrested while handing Marta his driver's license and before issuing a citation. "[T]he content of police questions during a lawful detention does not implicate the Fourth Amendment as long as those questions do not prolong the detention." *United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007) (citing *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005)). "The correct Fourth Amendment inquiry (assuming the detention is legitimate) is whether an officer's traffic stop questions 'extended the time' that a driver was detained, regardless of the questions' content." *Id.*; *see also United States v.*

7

*Alcaraz-Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006) (finding that although questioning during the writing of a warning ticket was not limited to travel plans or ownership of the vehicle, the questioning was lawful because it did not appreciably lengthen the detention).

In this case, Marta was under investigative detention for the littering offense, and Deputy Franzoy still intended to write a littering citation when he asked Marta whether he had previously been arrested. None of Deputy Franzoy's actions appreciably lengthened the duration of the stop. Therefore, there was no Fourth Amendment violation.

Marta also argues the district court's determination that Franzoy had already recognized Marta when he asked Marta whether he had been arrested before was clearly erroneous due to Deputy Franzoy's inconsistent testimony and the district court finding that one version was more chronologically precise. In its order, the district court determined that the cross-examination version was "somewhat more chronologically precisely and carefully" adduced. In this version, Deputy Franzoy testified that after Marta's information returned as "clear" and before the deputy began questioning Marta about his criminal history, Deputy Franzoy did not remember his previous encounter with Marta.

"To be clearly erroneous, a finding must be more than possibly or even probably wrong; the error must be pellucid to any objective observer." *United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010) (quotation omitted).

8

There is support in the record for the district court's factual finding because the deputy also testified that he recognized Marta when running his identification because the license helped to "jog [his] memory." ROA, Vol. III, at 41-42. This occurred before the deputy asked Marta whether he previously had been arrested.

Furthermore, notwithstanding the deputy's inconsistent testimony, the trial court affirmatively determined that the deputy was credible in testifying that there was a further need to detain Marta because of his intention to write a littering citation. As noted above, the further detention did not appreciably lengthen the investigative detention. As such, the district court did not err in denying Marta's motion to suppress.

## III. CONCLUSION

The district court's order denying defendant's motion to suppress is **AFFIRMED**.

Entered for the Court

Eric F. Melgren
U.S. District Judge

9