FILED
United States Court of Appeals
Tenth Circuit

April 3, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTONIO ORDUNA-MARTINEZ,

    Defendant-Appellant.

No. 07-3298

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:06-CR-40124-SAC)**

---

Christopher M. Joseph, Joseph & Hollander, P.A., Topeka, Kansas, for the
Defendant-Appellant.

James Brown (with Eric Mehlgren, United States Attorney, on the brief), Office
of the United States Attorney, District of Kansas, Topeka, Kansas, for the
Plaintiff-Appellee.

---

Before **HENRY**, Chief Judge, **SEYMOUR** and **ANDERSON**, Circuit Judges.

---

**HENRY**, Chief Judge.

---

    This case presents an unforeseen cost of perhaps vicarious alma mater

loyalty.  On May 30, 2006, Antonio Orduna-Martinez pleaded guilty to possession

of, with intent to distribute, approximately 25 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). Having conditioned his plea on the right to appeal the district court's denial of his motion to suppress, Mr. Orduna-Martinez argues that the sharp-eyed state trooper's initial stop of his vehicle was not supported by reasonable suspicion, as required by the Fourth Amendment, because the "Ohio State Buckeyes" metal tag bracket that "obstructed" his vehicle's license plate did not violate Kansas law. The district court found the stop justified based on the obstruction of both Mr. Orduna-Martinez's registration decal–the small sticker placed annually on the multi-year plate showing that fees for that year had been paid–and state name on his license plate. Because the trooper had reasonable suspicion of criminal activity based on the obstruction of his registration decal, we conclude that the trooper's actions did not violate Mr. Orduna-Martinez's Fourth Amendment rights. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the decision of the district court.

## I. BACKGROUND

On a clear day, Kansas Highway Patrol Trooper Chris Nicholas noticed a Ford Explorer with an Ohio license plate traveling eastbound on I-70. An "Ohio State Buckeyes" metal tag bracket surrounded the license plate. Trooper Nicholas noticed that the metal tag bracket partially obscured the license plate's registration decal. The decal was applied to the lower right-hand corner of the tag

and stated the tag's expiration date. The metal tag bracket, which otherwise would have entirely obscured the expiration date, had been cut so that part of the expiration date was showing.[1]

Trooper Nicholas pulled within approximately 50 feet of Mr. Orduna-Martinez's vehicle. From that vantage point, he could not read one of the two digits stating the expiration year. Because Trooper Nicholas apparently could read the month but not the year, the district court deduced that the bracket's obstruction, not the size of the lettering, made the registration date illegible. Had the decal been issued in Kansas, instead of Ohio, Trooper Nicholas could have determined the year of expiration from the color of the decal, but because he was

---

[1]A picture of the license plate and tag bracket as they approximately appeared prior to the stop is included at the end of this opinion. As the district court observed:

> The photograph of the tag with bracket, government's Exhibit 1, is "fairly accurate," but not completely accurate in its depiction of the tag at the time Trooper Nicholas saw it. This is because at some point after Trooper Nicholas' initial contact with defendant, the bracket was removed from the license plate and was broken, creating a small gap in the frame. The broken bracket was placed back on the license plate before the photograph was taken. Trooper Nicholas testified that the gap did make some difference in the appearance of the tag, and had pulled the bracket over to its original position and found it covered more of the information on the tag than shown in the photograph.

*United States v. Orduna-Martinez*, 491 F. Supp. 2d 1021, 1022 n.1 (D. Kan. 2007) (internal citations omitted).

unfamiliar with Ohio's color coding, he was unable to tell the year of the tag's expiration.

Based on the observed obstruction of the license plate, Trooper Nicholas stopped Mr. Orduna-Martinez's vehicle. While seated in his patrol car behind the stopped vehicle, Trooper Nicholas still could not read the tag's year of expiration. Only when he exited his patrol car, walked to the rear of the vehicle, and looked "behind the little notch" of the metal tag frame was he able to see the expiration date as "12-06." Rec. vol. III, at 49. According to the district court, this was when he determined that the tag was not expired.

Though Trooper Nicholas testified that the sole basis for the stop was the bracket partly covering the registration decal, Trooper Nicholas also testified that the bracket obscured the state name, "Ohio," which was written in cursive in a small, light blue font. The tag bracket covered the top part of the "O" and "h." The record is not clear when, if ever, Trooper Nicolas was unable to read the state name. In particular, Trooper Nicholas testified that the state name was "partially blocked." *See id.* at 50-51. However, he added that he "had a good idea" what it said. *Id.* at 50. When asked whether he could read "[t]he name itself," he responded, "Ohio, yes," but later stated he was unsure because he was "paying attention to the registration sticker being blocked." *Id.* Below the state name are the words, "Birthplace of Aviation," in much smaller print. Trooper Nicholas stated that at some point he could have guessed the vehicle was from Ohio, not

because of the "Buckeyes," because he knew that Ohio was the birthplace of flight.

Eventually, the traffic stop led to the discovery of approximately 25 kilograms of cocaine hidden in a compartment in the back of the Explorer. Trooper Nicholas arrested Mr. Orduna-Martinez, and in March of 2006, a federal grand jury charged him with possession with intent to distribute approximately 25 kilograms of cocaine, a violation of 21 U.S.C. § 841(a)(1). Mr. Orduna-Martinez filed a motion to suppress the evidence found during the search of his vehicle. He argued that Trooper Nicholas did not have probable cause or reasonable suspicion to stop his vehicle because obstruction of the registration decal is not a crime under Kansas law and because the state name was too minimally obscured to constitute a violation of Kansas law. Mr. Orduna-Martinez also argued that Trooper Nicholas improperly extended the duration of the stop and violated other constitutional rights, though he does not appeal the district court's denial of relief on these claims. After holding an evidentiary hearing, the district court denied the motion to suppress, rejecting the challenges to the initial stop because (1) the trooper had reasonable suspicion to stop the vehicle because the tag bracket partially covered the expiration date on the registration decal, illegally rendering the "6" in the "12-06" illegible and (2) alternatively, the trooper had reasonable suspicion to stop the vehicle because the tag bracket partially covered the state name, "Ohio." We review the facts found by the district court for clear error and

construe them in the light most favorable to the prevailing party. Mr. Orduna-Martinez entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress. The district court sentenced Mr. Orduna-Martinez to 46 months in prison followed by three years of supervised release.

## II. DISCUSSION

In this appeal, Mr. Orduna-Martinez contends that Trooper Nicholas lacked reasonable suspicion to stop him because Kansas law does not require registration decals to be legible. In support of that contention, he first invokes the particular Kansas statute that prescribes the standards for these decals, Kan. Stat. Ann. § 8-134, noting that the statute does not expressly require those decals to be legible, or even visible. Then, he turns to the statute that requires license plates in general to be "clearly legible," Kan. Stat. Ann. § 8-133. Citing cases that have held that "clearly legible" means legible to an officer following at a safe distance, Mr. Orduna-Martinez observes that because of their small size, registration decals are not legible from that distance. For that reason as well, he concludes, the legibility requirement does not apply to decals. We review these legal, statutory construction arguments de novo. *United States v. DeGasso*, 369 F.3d 1139, 1144 (10th Cir. 2004).

A.    The Fourth Amendment requires reasonable suspicion of legal wrongdoing to stop a vehicle.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  "The detention of a driver, however brief, during the course of a routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir. 2006).  Standards that the Supreme Court established in *Terry v. Ohio*, 392 U.S. 1 (1968), govern the application of the Fourth Amendment to traffic stops and resulting detentions.  In *Terry*, the court recognized that there is no "ready test" to determine the reasonableness of a seizure other than "balancing the need to . . . seize against the invasion which the . . . seizure entails. *Id.* at 21.  Thus, courts must determine "whether the stop and detention, considered in light of the totality of the circumstances, were reasonable." *Edgerton*, 438 F.3d at 1047.

But the Supreme Court has made a lot reasonable.  "A traffic stop is reasonable at its inception if the detaining officer, at the very least, reasonably suspects the driver has violated the law." *Id.*  "While something more than a 'hunch' of wrongdoing is necessary, the level of suspicion required to support a traffic stop is 'considerably less' than proof of wrongdoing by a preponderance of the evidence." *Id.* (quoting *United States v. Dennison*, 410 F.3d 1203, 1207-08 (10th Cir. 2005)).  "To satisfy the Fourth Amendment's reasonableness

requirement, only a 'minimal level of objective justification' for a traffic stop need exist." *Id.* (quoting *Denison*, 410 F.3d at 1207). The trooper's subjective intent or good faith do not affect the reasonableness of the stop. *Whren v. United States*, 517 U.S. 806, 813 (1996). Similarly, an officer's mistake of law usually cannot justify a traffic stop under the Fourth Amendment. *See United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005) ("We have consistently held that an officer's mistake of fact, as distinguished from a mistake of law, may support probable cause or reasonable suspicion necessary to justify a traffic stop." (citations omitted)).[2] In *Delaware v. Prouse*, the Supreme Court confirmed that, without reasonable suspicion of a violation of law, officers may not stop motorists for the sole purpose of determining if their registration is current. 440 U.S. 648, 663 (1979).

---

[2] As a rule, if a defendant is presumed to know the law, we must expect as much from law enforcement. *See United States v. Hodson*, 77 U.S. (10 Wall.) 395, 409 (1870) ("Everyone is presumed to know the law."). *But see United States v. Ledesma*, 447 F.3d 1307, 1313 (10th Cir. 2006) ("[S]tate troopers cannot be expected to possess encyclopedic knowledge of the traffic regulations of *other states*." (emphasis added)). Other circuits have held that a trooper's reasonable mistake of law cannot make an otherwise impermissible stop reasonable. *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003) ("[A] mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop." (citing *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000); *United States v. Miller*, 146 F.3d 274, 278 (5th Cir. 1998))). In agreement with these circuits, we have held that "failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable." *Tibbetts*, 396 F.3d at 1138 (citing *DeGasso*, 369 F.3d at 1144).

B.     Kansas law prohibits obstruction of registration decals.

Under Kansas law, every "license plate shall have displayed on it the registration number assigned to the vehicle . . . , the name of the state, . . . and the year or years for which [the license plate] is issued."  Kan. Stat. Ann. § 8-132(a). Kansas law further requires license plates at all times to be "clearly visible, . . . free from foreign materials[,] and in a condition to be clearly legible."  *Id.* § 8-133.  The Kansas Court of Appeals has held that "the display of an illegible or obscured vehicle tag is a violation of Kan. Stat. Ann. § 8-133, even if the vehicle is duly licensed in another state."  *State v. Hayes*, 660 P.2d 1387, 1389 (Kan. App. 1983).  Following *Hayes*, this court has concluded that § 8-133 applies to out-of-state vehicles.  *See United States v. Martinez*, 518 F.3d 763, 767 (10th Cir. 2008); *United States v. Ledesma*, 447 F.3d at 1313.  Mr. Orduna-Martinez does not dispute that proposition here.

When passed, §§ 8-132 and 8-133 applied to license plates with dates stamped directly into the plate.  *Orduna-Martinez*, 491 F. Supp. 2d at 1026.  In 1976, Kansas began using a registration sticker to display the date instead of changing the entire plate.  *Id.*  The legislature passed a statute granting the director of vehicles the authority to "prescribe the size of and material to be used in the production of such decals."  Kan. Stat. Ann. § 8-134.  However, that statute does not mention legibility or visibility.  *Id.*

Mr. Orduna-Martinez siezes this omission, arguing that the legibility and visibility requirements do not apply to registration stickers. We disagree. Read as a whole, the Kansas statutes require the date on the registration sticker to be clearly visible, free from foreign materials, and clearly legible. That conclusion is required by the Kansas Court of Appeals's decision in *Hayes* and supported by this court's decision in *United States v. Lyons*, 510 F.3d 1225 (10th Cir. 2007). Although *Hayes* involved a license plate on which the state name (rather than the registration decal) was not visible, the court stated that "all of the tag must be legible, including the state name." 660 P.2d at 1389 (emphasis added). The registration decal is part of the tag. *See Lyons*, 510 F.3d at 1230, 1236 (concluding that, when an out-of-state license plate was dirty and an officer could not read an "expiration sticker" as he followed closely behind the defendant's car, the officer had a reasonable suspicion that the defendant had violated § 8-133).

The definitional section of the Kansas licensing statutes, Kan. Stat. Ann. § 8-126a, provides additional support for our view. Section 126a states that "license plate" "mean[s] and include[s] any plate, tag, token, marker or sign issued under the provisions of this act for the purpose of identifying vehicles registered under the provisions of the motor-vehicle registration laws of this state or otherwise carrying out the provisions of such laws." In light of the fact that the Kansas statutes require vehicle owners to obtain new registration decals every

year, *see* Kan. Stat. Ann. §§ 8-132(b), 8-134, those decals constitute "token[s], marker[s] or sign[s] issued for the purpose of . . . carrying out" Kansas's vehicle registration laws, and they are therefore part of the "license plate" that must be clearly legible under § 8-133.

Mr. Orduna-Martinez also invokes two unpublished opinions from the federal district court holding that, as used in § 8-133, "clearly legible" means visible to an officer following at a safe distance. *See United States v. Rubio-Sanchez*, No. 05-40081-01-SAC, 2006 WL 297724, at * 4 (D. Kan. Feb. 8, 2006) (finding a tag is "clearly legible" on a moving car if it is capable of being read by an officer in a car immediately following a safe distance behind); *United States v. Granados-Orozco*, No. 03-40035-01/02-SAC, 2003 WL 22213129, at *2 (D. Kan. Aug. 26, 2003). He argues that registration decals are never legible from a moving vehicle following at a safe distance. As a result, he contends the "clearly legible" requirement should not be applied to registration decals.

These case-law definitions of "clearly legible" do not persuade us that Kansas intended to allow obstruction of registration decals. The federal district court cases on which Mr. Orduna-Martinez relies do not purport to offer a definition of "clearly legible" that applies in all circumstances. Instead, those cases merely conclude that, in the circumstances at issue (a truck's ball hitch blocking the middle numbers of a paper tag and loose plastic cellophane that was flapping in the wind covering a temporary tag), the license plates were not

"clearly legible" because the officer could not read them while following the vehicles at a safe distance. In our view, in different circumstances, "clearly legible" may have a broader meaning, and where a metal bracket obstructs a registration decal so that the decal can only be read by looking behind the frame, the decal is not "clearly legible."

        C.     Trooper Nicholas had reasonable suspicion to stop Mr. Orduna-Martinez.

Because the legibility requirement applies to registration decals, Trooper Nicholas had the reasonable suspicion necessary to stop Mr. Orduna-Martinez's Explorer. Reasonable suspicion to stop a vehicle requires an "objective basis for believing Defendant had violated some law." *Edgerton*, 438 F.3d at 1047. As noted above, Kansas law prohibits obstructing one's registration decal, which contains the "year or years for which it is issued." *See* Kan. Stat. Ann. §§ 8-132, 8-133. As Mr. Orduna-Martinez concedes and as one can see from the photograph of the license plate and bracket, the date on the registration decal is obscured. Trooper Nicholas took note of the obstruction prior to stopping the vehicle. Based on this obstruction, the trooper had reasonable suspicion that Mr. Orduna-Martinez was violating Kan. Stat. Ann. § 8-133.[3]

_____

[3] The Kansas licensing statutes also require state names to be clearly visible. *See Hayes*, 660 P.2d at 1389 ("[*A*]*ll* of the tag must be legible, including

(continued...)

- 12 -

III. CONCLUSION

Thus, as Kansas law prohibits obstruction of registration decals and Mr. Orduna-Martinez admits his decal was obstructed, we AFFIRM.

The cases we have utilized make it clear that relatively slight obstructions of the registration decal can give rise to a proper traffic stop. Indeed in a state like Kansas, where its partisans are justifiably proud of their athletic teams, prevalent home-team brackets may result in a stop.

---

[3](...continued)
the state name, which may be the most important information on the tag."). Here, the district court found that the stop was also justified by the obstruction of the state name on Mr. Orduna-Martinez's license plate.

The record is not clear if Trooper Nicolas could read the state name or took note of the obstruction prior to stopping the vehicle. In particular, Trooper Nicholas testified that the state name was "partially blocked." *See* Rec. vol. III, at 50-51. Later, he explained that he did not know whether he could read the state name, because he was focusing on the registration decal. Because we conclude that the obstruction of the registration decal justified the stop, we need not address the district court's alternative holding that the obstruction of the state name also justified the stop.

