FILED
United States Court of Appeals
Tenth Circuit

January 18, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

No. 08-6048

ANDREW POLLY,

      Defendant-Appellant.

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:06-CR-00245-HE-1)**

Caren I. Friedman, Santa Fe, New Mexico, for Defendant-Appellant.

Leslie M. Maye, Assistant United States Attorney (John C. Richter, United States Attorney, also on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before **LUCERO, ANDERSON,** and **EBEL,** Circuit Judges.

**EBEL**, Circuit Judge.

      Defendant Andrew Polly was arrested on March 14, 2006, after police discovered crack and powder cocaine on his person and in his vehicle. Later, police also found

powder cocaine in a storage unit rented by Polly. The district court denied Polly's

motions to suppress the cocaine, and Polly pled guilty. On appeal, Polly claims that

(1) the district court erred in denying his suppression motions, (2) the district court erred

in applying a sentencing enhancement for obstruction of justice, (3) he is entitled to a

reduction in his sentence, and (4) his counsel was ineffective at the suppression phase of

the proceedings. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the

district court. We dismiss, without prejudice, Polly's ineffective assistance of counsel

claim.

## I.      Background

On the afternoon of March 14, 2006, police were investigating KC's Garage, a

vehicle repair garage in Oklahoma City, Oklahoma, for drug-trafficking activity. [1]

Several patrol cars were parked next to the garage, while undercover officer Jimmy

Cortez was parked across the street in an unmarked car. Cortez observed a pickup truck

drive down the street in front of the garage, signal a left turn into the garage, start to turn,

crossing the middle line of the street, and then, possibly because he noticed the police

cars at the garage, continue down the street. Because the vehicle's driver and passenger

windows were rolled down, Cortez recognized Polly as the driver. Cortez knew Polly

---

[1] These facts are largely drawn from the evidence found at the suppression hearing. The
parties did not include the suppression hearing transcript or the plea agreement in the
appellate record. However, we have, sua sponte, supplemented the record with those
documents. See Fed. R. App. P. 10(e)(2)(C); United States v. Holly, 488 F.3d 1298,
1308 n.10 (10th Cir. 2007).

because officers had previously conducted a controlled drug buy with Polly and suspected Polly of involvement in drug distribution with the owner of the garage. Cortez, in his unmarked car, followed Polly, and observed him speeding through a residential area. Cortez called for a marked police car to pull over Polly, and Officer Blosser did so.

As Blosser asked Polly for his driver's license and proof of insurance, Cortez pulled in behind Blosser. Cortez asked Polly if he would step out of his vehicle, and Polly did so. Cortez then asked Polly if he had any guns, drugs, or other illegal objects on his person, and Polly said that he did not. Cortez asked the same question in regard to Polly's car, and Polly stated that he did not see any reason to search the vehicle. Cortez then asked Polly if Blosser could search him so that he could be placed in the back of Blosser's car while Cortez issued him traffic citations for speeding and for crossing over the center lane line. According to Cortez, Polly responded by saying, "I don't mind."

While patting down Polly, Blosser felt a large round object in his right front pants pocket. Blosser asked, "What is this?", and Polly stated that he did not know. Cortez testified that he heard a crinkling noise that sounded like plastic baggies. Blosser removed the baggies from Polly's pocket, and the baggies appeared to contain crack cocaine, packaged individually in different quantities. Polly was then arrested, and in the subsequent search of Polly, the officers seized $992 in cash.

While this was taking place, Cortez noticed that residents of the area—which was a high-crime area—began coming out of their homes and were questioning the officers about the traffic stop. Out of a concern for officer safety, Cortez radioed for other

3

officers to come to the scene at this time.  Cortez asked one of the officers who then

arrived to drive Polly's truck back to the police station where it could be searched.  Back

at the station, officers searched the vehicle and found a receipt for a U-Haul storage unit,

keys for a U-Haul lock, digital scales, razor blades, latex gloves, and a shaving bag

containing crack cocaine and cocaine powder.  Officers then obtained a search warrant

for the U-Haul storage unit, where they discovered cocaine powder.

Polly was indicted on three counts (for the drugs found on his person, in his

vehicle, and in the storage unit, respectively) of knowingly and intentionally possessing,

with intent to distribute, crack cocaine and cocaine powder, in violation of 21 U.S.C.

§ 841(a)(1).  Polly moved to suppress the evidence from the three searches, but the

district court denied his motions after an evidentiary hearing.  Polly subsequently entered

a plea of guilty, withdrew his guilty plea, and changed attorneys.  A bench trial was set

for September 17, 2007, on which date Polly, rather than begin a trial, again pled guilty to

the indictment.  The parties had apparently not anticipated the guilty plea, and so none of

the paperwork for a guilty plea had been prepared before that day.  The parties used the

document Polly signed on January 4, 2007, in which he originally agreed to plead guilty,

and simply modified it by adding the signature of Polly's new attorney and making some

modifications to the document.  The court accepted Polly's plea of guilty and the plea

agreement, which preserved his right to appeal the denial of his motions to suppress, but

otherwise provided a general waiver of his appeal rights.

## II.    Discussion

### A. Motions to suppress

On appeal, Polly challenges the district court's denial of his motions to suppress the evidence discovered in the searches of his person and his truck. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures . . . .'" United States v. Orduna-Martinez, 561 F.3d 1134, 1137 (10th Cir. 2009) (quoting U.S. Const. amend. IV). "[A] warrantless search is presumptively unreasonable under the Fourth Amendment and therefore invalid unless it falls within a specific exception to the warrant requirement." Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir. 2003).

Upon review of the denial of a motion to suppress, "we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Eckhart, 569 F.3d 1263, 1270 (10th Cir. 2009), cert. denied, 130 S. Ct. 1752 (2010). In this case, the district "court generally found Officer Cortez' testimony at the [suppression] hearing to be credible" (Doc. 29 at 4), a factual finding we review for clear error.[2] United States v. Taylor, 592 F.3d 1104,

---

[2] Polly challenges the credibility of Cortez's testimony that Polly needed to be placed in a patrol car in order for the police to issue him the traffic citations. Cortez testified that in this situation, he was concerned about his own safety because Cortez frequently conducted undercover operations in the area and he was concerned about being recognized by residents. Cortez also articulated safety concerns about Polly remaining in his truck, including that Polly was higher than the officers while he was in his truck and

1108 (10th Cir.), <u>cert. denied</u>, 130 S. Ct. 3339 (2010).

### 1. Search of Defendant's person

Polly first argues that the search of his person was unreasonable, both because the traffic stop was unjustified and because the resulting detention exceeded the scope of the stop.

For Fourth Amendment purposes, the legality of a traffic stop is assessed pursuant to the framework established in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>See</u> <u>United States v. Winder</u>, 557 F.3d 1129, 1133 (10th Cir.), <u>cert. denied</u>, 129 S. Ct. 2881 (2009). Accordingly, we proceed in two steps. First, we question whether the traffic stop "was 'justified at its inception.'" <u>Id.</u> (quoting <u>United States v. Valenzuela</u>, 494 F.3d 886, 888 (10th Cir. 2007)). Second, if the stop was justified, "we determine whether 'the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place.'" <u>Id.</u> at 1134 (quoting <u>Valenzuela</u>, 494 F.3d at 888).

Polly argues that the traffic stop was not justified at the outset because it was just a ruse so that Officer Cortez could further his drug-trafficking investigation. "A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." <u>Id.</u> at 1134. Even if Polly is correct that the traffic stop was simply a ruse, that fact is legally

---

Polly has some history of violence. Thus, it appears that Cortez had good reason to want to place Polly in the patrol car while issuing the citations, and we cannot conclude that the district court clearly erred in crediting Cortez's testimony.

6

irrelevant. In determining whether a traffic stop is constitutional, the officer's "subjective intent or good faith do[es] not affect the reasonableness of the stop." Orduna-Martinez, 561 F.3d at 1137 (citing Whren v. United States, 517 U.S. 806, 813 (1996)); see also Winder, 557 F.3d at 1134 (noting that "an officer's actual motivations or subjective beliefs and intentions are, quite simply, irrelevant" (internal quotations omitted)). Accordingly, "an officer's motive" will not "invalidate[] objectively justifiable behavior under the Fourth Amendment." Whren, 517 U.S. at 812 (emphasis added).

There can be little doubt that the traffic stop here was objectively justifiable based on the traffic violations that Cortez observed. The district court found that Polly committed traffic violations both by crossing the centerline and by speeding. Although Polly disputes whether he was speeding, he has not shown that the district court clearly erred in determining that Cortez observed him speeding. Polly also claims that he did not commit a traffic violation by crossing the centerline because he was merely making a left turn and then changed his mind and proceeded, which is not, according to Polly, a traffic violation. However, the Oklahoma statute he cites in support of this proposition states only that one can cross the centerline when making a left turn, not that someone can cross the centerline in the process of an aborted left turn and come back over the centerline. 47 Okla. Stat. Ann. § 11-301(C). Therefore, Polly has not established that the district court clearly erred in finding that Officer Cortez observed Polly commit two traffic violations, and so the traffic stop was justified at its inception.

We turn now to considering whether the scope of the traffic stop was "reasonably

7

related to the circumstances which justified [the stop] in the first place." Eckhart, 569 F.3d at 1273. In conducting this inquiry, we "focus on the reasonableness of the traffic stop in light of both the length of the detention and the manner in which it was carried out." Valenzuela, 494 F.3d at 890. Accordingly, "officers may ask questions outside the scope of the traffic stop so long as the questions do not appreciably prolong the length of the stop." Id.

The detention of Polly was reasonable with regard to both the length of the detention and the manner in which the police proceeded. First, Officer Blosser asked Polly for his license and registration, which the police are unquestionably permitted to do in the course of a traffic stop. See United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993) ("During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation."). Cortez then asked Polly to step out of the vehicle, which is also permissible during a routine traffic stop for purposes of officer safety; here, where Cortez knew of Polly's violent past and Polly was seated about two feet above the officers in his truck, the officer safety concern was clearly met. See United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994) (citing Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (per curiam)). Next, Cortez asked Polly if he had any guns, knives, drugs, or other illegal items on his person or in his vehicle, a question which we have previously upheld as permissible. See Valenzuela, 494 F.3d at 890.

At this point, Cortez asked Polly if he could be searched so that he could be placed

in Blosser's patrol car while the officers wrote him two traffic citations, and Polly said "I don't mind." Since Polly's commission of two traffic offenses constituted the original justification for the stop, this question was "reasonably related to the circumstances which justified [the stop] in the first place." Eckhart, 569 F.3d at 1273.

The district court upheld the legality of the ensuing search as a warrantless search authorized by valid consent. See Eidson v. Owens, 515 F.3d 1139, 1145-46 (10th Cir. 2008) (recognizing "valid consent" as an exception to the general prohibition against warrantless searches). Polly first argues that, as a factual matter, his statement was not a consent to search. Although Cortez testified that Polly said "I don't mind" when asked whether Blosser could search him, Polly testified that he said "I don't care." Polly claims that "I don't care" does not show consent, but rather shows that Polly thought he was going to be searched regardless of how he responded. First, we note that the district court relied on Cortez's testimony that Polly said "I don't mind," and Polly has not shown that reliance to be clearly erroneous. Even if we considered the possibility that Polly actually said "I don't care," we cannot agree with the fine parsing of the language that he suggests. While Polly does not cite to any authority supporting his linguistic interpretation, some courts have found that "I don't care" does indicate consent to search. See, e.g., United States v. Thompson, 403 F.3d 533, 537 (8th Cir. 2005) (noting that defendant "consented by stating 'I don't care' and then opening the door of his vehicle"); United States v. Crain, 33 F.3d 480, 483 (5th Cir. 1994) (failing to note any distinction between "I don't care," "I don't mind," and "go ahead"). As a factual matter, then, Polly

9

stated his consent to the pat-down search.

Polly next argues that his consent was legally invalid because it was coerced. "Whether a party freely and voluntarily gave his consent to a search is a question of fact and is determined from the totality of the circumstances." United States v. Sanchez, 608 F.3d 685, 689 (10th Cir. 2010) (quotations, alterations omitted), petition for cert. filed, (U.S. Oct. 5, 2010) (No. 10-6895). The district court found, based on the totality of the circumstances, that consent was voluntary because "[t]he officers did not have their weapons drawn, they used a conversational tone in their dealings with defendant, the defendant was in a public place, and only two officers were present." (Doc. 29 at 6.) This determination was not clearly erroneous. Polly claims that Cortez said he would call a drug-sniffing dog if Polly did not consent, but Cortez denied it, and the district court credited Cortez's testimony over Polly's. Even if Cortez had stated he would bring in a drug-sniffing dog, the mere fact that a suspect has to choose between two lawful, albeit distasteful, options does not render that choice coerced. See United States v. Butler, 966 F.2d 559, 563 (10th Cir. 1992) (finding consent to search voluntary where a joint resident of an apartment told the defendant that if they did not consent to search, the police would get a warrant anyway); see also United States v. White, 979 F.2d 539, 542 (7th Cir. 1992) ("When the expressed intention [of a police officer] to obtain a warrant is genuine . . . it does not vitiate consent.").

The stop of Polly's truck was justified at the outset by his commission of two traffic offenses, and the scope of the stop was reasonable. As Polly consented to the

search of his person, the drugs that were found in his pockets were obtained without violation of his Fourth Amendment right to be free from unreasonable searches and seizures.

## 2. Search of Defendant's vehicle

Polly next argues that the drugs found in his truck should be suppressed. Although that search was conducted without a warrant, the government contends that the search of the truck was justified as a search incident to a valid arrest. The district court properly rejected this argument. The Supreme Court recently held that that exception applies only to areas within an arrestee's "immediate control," and so the exception "does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." Arizona v. Gant, 129 S. Ct. 1710, 1714 (2009). The truck was searched after Polly was arrested and the truck was separately taken back to the police station by police officers, and so the truck clearly was not in an area within Polly's immediate control at the time it was searched. The search of the truck thus cannot be justified as a search incident to a valid arrest.

Nevertheless, the district court correctly concluded that the search was justified instead by the vehicle exception to the warrant requirement. "If there is probable cause to believe a vehicle contains evidence of criminal activity," the warrant requirement does not apply to "a search of any area of the vehicle in which the evidence might be found." Id. at 1721 (citing United States v. Ross, 456 U.S. 798, 820-21 (1982)). Here, we have little trouble concluding that, after the search of Polly, probable cause existed that

justified an evidentiary search of the vehicle. In addition to the facts that Polly had already sold drugs to undercover agents as part of a controlled buy and had appeared to flee upon seeing the police at the garage, the police had just searched his person and found a substantial amount of crack cocaine on him after he exited the vehicle. These factors are sufficient to establish probable cause that the truck contained illegal drugs. Indeed, Polly's principal argument as to why the probable cause vehicle exception should not apply is that the probable cause to search the truck was premised upon the unlawfully obtained crack found in his pocket, an argument that we have already rejected. Therefore, the search was valid under the vehicle exception to the Fourth Amendment's warrant requirement.[3]

### B. Appeal waiver

Polly next argues that 1) the district court erred in enhancing Polly's offense level by two after finding Polly obstructed justice by committing perjury during his testimony at the suppression hearing, and 2) Polly is entitled to a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2), in light of the Sentencing Commission's amendment to the Sentencing Guidelines lowering the offense level for convictions involving crack cocaine. The government contends that both of these claims are barred by the appeal waiver contained in Polly's plea agreement. We agree.

---

[3] Polly also argues that the evidence obtained from the storage unit should be suppressed as fruit of the poisonous tree because of the illegality of the earlier searches. See United States v. Olivares-Rangel, 458 F.3d 1104, 1108-09 (10th Cir. 2006). However, because we conclude that those searches were in fact legal, this argument necessarily fails.

Regarding his appeal waiver, Polly's plea agreement states[4]:

8. Defendant understands that the Court will consider those factors in Title 18, United States Code, Section 3553(a) in determining his sentence. Defendant also understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum for the offense(s) to which he is pleading guilty. Defendant further understands that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, give him the right to appeal the judgment and sentence imposed by the Court. Acknowledging all this, defendant in exchange for the promises and concessions made by the United States in this plea agreement, knowingly and voluntarily waives his right to:

a. Appeal or collaterally challenge his guilty plea, sentence and restitution imposed, and any other aspect of his conviction, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; except the defendant preserves his right to appeal the rulings on his three Motion [sic] to Suppress (Doc. No. 23 and 29), pursuant to Rule 11(a)(2) Fed. R. Crim. P.

b. Appeal, collaterally challenge, or move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case. Defendant acknowledges that this waiver remains in full effect and is enforceable, even if the Court rejects one or more of the positions of the United States or defendant set forth in Paragraph 7 [addressing the possible application of the sentencing guidelines to Polly's case].

c. It is provided that defendant specifically does not waive the right to appeal a sentence above the advisory sentencing guideline range determined by the Court to apply to this case.

---

[4] Polly's attorney at the plea hearing mistakenly crossed out this section of the plea agreement. To correct this mistake, defense counsel, the prosecutor, and Polly himself initialed next to a note reading "This stays in as part of plea agreement," and defense counsel stated during the hearing that he "inadvertently put a line through some areas" of the plea agreement, but that they had corrected those mistakes. (Plea Agreement at 9-10; Plea Tr. at 48.) Thus, this section of the Plea Agreement remains valid.

9. The United States agrees to waive its right under 18 U.S.C. § 3742 to appeal the sentence imposed by the Court and the manner in which the sentence was determined, provided defendant's sentence is within the advisory guideline range determined by the Court to apply to this case. By this agreement, the United States specifically does not waive its right to appeal a sentence below the advisory sentencing guideline range determined by the Court to apply to this case.

(Plea Agreement at 9-10.)

An appeal "waiver . . . will be enforced if: (1) 'the disputed appeal falls within the scope of the waiver of appellate rights; (2) . . . the defendant knowingly and voluntarily waived his appellate rights; and (3) . . . enforcing the waiver would [not] result in a miscarriage of justice.'" United States v. Vidal, 561 F.3d 1113, 1118 (10th Cir.) (quoting United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (per curiam) (en banc)), cert. denied, 130 S. Ct. 221 (2009). This "waiver-enforceability analysis is informed by contract principles, which govern plea agreements." United States v. Ibarra-Coronel, 517 F.3d 1218, 1221 (10th Cir. 2008). "Whether a defendant's appeal waiver set forth in a plea agreement is enforceable is a question of law." Id. With this background, we address the applicability of the waiver to Polly's claims about the erroneous sentence enhancement and his entitlement to a reduction in his sentence pursuant to § 3582(c)(2).

## 1. Sentence enhancement

Polly claims that the district court erred in increasing his offense level by two, pursuant to Sentencing Guideline § 3C1.1, after the court found that Polly committed perjury when he testified during the suppression hearing. Polly does not argue that this claim falls outside of the scope of the waiver, nor does he argue that the waiver was not

14

knowing and voluntary. Rather, Polly argues that enforcing the waiver as to this claim would result in a miscarriage of justice because the "error seriously affects the fairness and integrity of the proceedings." (Reply Br. at 10-11.)

For purposes of the enforcement of an appeal waiver, "[a] miscarriage of justice occurs [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." United States v. Shockey, 538 F.3d 1355, 1357 (10th Cir. 2008) (quotation omitted). This "list is exclusive: 'enforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of the four situations enumerated' above." Id. (quoting Hahn, 359 F.3d at 1327). Polly's complaint—that enforcement of the waiver would seriously affect the fairness and integrity of the proceedings—does not fit into any of the categories.

We rejected a nearly identical argument in United States v. Smith, 500 F.3d 1206 (10th Cir. 2007). In Smith, we applied the defendant's appeal waiver to bar a claim that the district court erred in applying the § 3C1.1 enhancement, and that the error "affect[ed] the fairness of the proceedings, as well as the integrity and public reputation of the judicial system." Id. at 1212.

> Ms. Smith misunderstands the miscarriage of justice exception to enforcement of a waiver of appellate rights. This exception looks to whether "the waiver is otherwise unlawful," [Hahn, 359 F.3d at 1327]

15

(emphasis added), not to whether another aspect of the proceeding may have involved legal error. Ms. Smith's argument that alleged errors in the court's determination of her sentence should invalidate her appellate waiver illustrates what <u>Hahn</u> called "the logical failing[ ] of focusing on the result of the proceeding, rather than on the right relinquished, in analyzing whether an appeal waiver is [valid]." <u>Id.</u> at 1326 n. 12 (discussing whether an appeal waiver was knowing and voluntary) . . . .

<u>Smith</u>, 500 F.3d at 1212-13. Because Polly does not challenge the lawfulness of the waiver itself, enforcing the waiver as to his claim that the district court improperly applied the obstruction of justice sentence enhancement does not result in a miscarriage of justice. The appeal waiver thus bars this claim.

### 2. Reduction in sentence based on amendment to Sentencing Guidelines

Polly also argues that his sentence should be modified because the United States Sentencing Commission amended the Guidelines in 2008 to provide for a lower offense level when an offense involves cocaine base and another controlled substance. <u>See</u> U.S.S.G. § 2D1.1 app. n.10(D)(i). According to Polly, this falls outside the scope of the appeal waiver because, in light of this amendment, Polly's sentence is above the Guideline range that would apply if he were sentenced today. (<u>See</u> Plea Agreement at 9 (stating that waiver of right to challenge sentence applies, "provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case").)[5]

---

[5] In advancing this argument, Polly invokes § 3582(c)(2), which allows a district court to reduce a term of imprisonment in light of a change to the Sentencing Guidelines. However, a motion pursuant to § 3582(c)(2) must be brought in the district court. <u>See</u>

16

This argument is contradicted by the plain terms of the waiver. The waiver explicitly waives his right to "[a]ppeal, collaterally challenge, or move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case." (Plea Agreement at 9.) Polly does not dispute, nor can he, that his sentence was within the guideline range "determined by the Court to apply to this case." (Id.) The waiver does not contemplate permitting a court to reassess what guideline range would apply if the defendant was sentenced today, and instead looks only at the guideline range that the district court actually applied. See United States v. Jones, 531 F.3d 163, 180 n.9 (2d Cir. 2008) ("Where a defendant sentenced pursuant to the former crack Guidelines has waived his right to appeal . . . the amended Guidelines [do not] constitute grounds for finding that appeal waiver unenforceable." (quotations, alteration omitted)). Accordingly, this argument falls within the scope of the appeal waiver.

Polly does not claim that he did not knowingly and voluntarily agree to the waiver, nor that enforcement of the waiver on this ground would constitute a miscarriage of justice. Therefore, Polly's appeal waiver applies to bar this claim.

Winder, 557 F.3d at 1136-37 (noting that § 3582 "vest[s] the district court with the power to assess" whether a change in the Guidelines warrants a sentence reduction). Nonetheless, whether this claim is pressed as a challenge to his sentence on direct appeal or as a § 3582(c)(2) motion, the claim is clearly barred by the appeal waiver.

17

## C. Ineffective assistance of counsel

Finally, Polly contends that he received ineffective assistance of counsel at the suppression phase of the case due to counsel's failure to interview witnesses and subpoena the radio dispatch. We decline to consider this claim on direct appeal.[6]

"Ineffective assistance of counsel claims 'should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.'" United States v. Calderon, 428 F.3d 928, 931 (10th Cir. 2005) (quoting United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc)). On direct appeal, the record is not developed with the purpose of showing counsel's competence, and the district court has not yet had an opportunity to consider counsel's effectiveness. See Massaro v. United States, 538 U.S. 500, 505-06 (2003). By contrast, a § 2255 proceeding affords both the defendant and the government an opportunity to demonstrate whether counsel rendered effective assistance. Furthermore, the district court will be the first to pass upon the effectiveness of counsel, and because the judge considering the § 2255 motion will usually be the same judge who presided at trial, the district court "should have an advantageous perspective for determining the effectiveness of counsel's conduct and

---

[6] The government argues that this argument, too, is barred by the appeal waiver. However, it is not clear to us whether the appeal waiver contained in the plea agreement would bar a 28 U.S.C. § 2255 motion challenging the effectiveness of Polly's counsel in regard to the motion to suppress. Because we dismiss this claim for the procedural reason discussed below, we leave the question of the applicability of the appeal waiver to this claim for the district court to decide in the first instance, should Polly pursue the issue in a § 2255 motion.

whether any deficiencies were prejudicial." Id. at 506.

These concerns compel dismissal without prejudice of Polly's ineffective assistance of counsel claim here on direct appeal. Although Polly mentioned at his plea hearing that he thought his counsel failed to investigate and bring forward certain evidence that was relevant to the suppression issue, Polly did not have a chance at that time to develop fully a record that would support such a claim. Therefore, we conclude that Polly's claim that his counsel provided ineffective assistance during the suppression phase must be dismissed without prejudice as improperly raised on direct appeal.

## III. Conclusion

For the foregoing reasons, we AFFIRM Polly's conviction and sentence. We DISMISS without prejudice his claim of ineffective assistance of counsel.