**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

v.

JUAN GONZALEZ-GUYTAN,

　　　　Defendant-Appellant.

No. 10-5090
(D.C. No. 4:10-CR-00005-JHP-1)
(N.D. of Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

---

Juan Gonzalez-Guytan was convicted of possession with intent to distribute

marijuana and conspiracy to commit the same. A law enforcement officer had

stopped Gonzalez-Guytan after observing his failure to yield to an emergency

vehicle while driving. Evidence uncovered during the traffic stop was presented

at his trial. On appeal, he challenges the district court's denial of his motion to

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

suppress evidence from the traffic stop and argues the officer who stopped his vehicle lacked probable cause.

After a careful review of the record, we conclude the district court properly denied the motion to suppress. Gonzalez-Guytan failed to yield and immediately pull over after an officer driving behind him activated his emergency lights and siren, as required by Oklahoma law. The traffic stop was valid based upon this observed traffic violation. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Based on a tip from a confidential informant, the Tulsa County Drug Task Force identified an apartment as a distribution point for the storage and sale of large quantities of methamphetamine and marijuana. The informant also told officers to expect a load of marijuana to be transported in a white van from the apartment. He identified one of the drug dealers as a Hispanic male.

During surveillance of the apartment, a blue pickup truck stopped at the apartment complex, and a Hispanic man entered the apartment. Later, two Hispanic men left the apartment, with one driving off in a white van and the other following in a blue pickup.

The surveillance team decided not to immediately stop the vehicles but followed them in hopes of gaining additional information. Due to heavy traffic and a concern they could lose the vehicles, the officers decided to stop the white

van, which they believed contained contraband marijuana. An officer in a nearby patrol car pulled into traffic with two vehicles between him and the white van and blue pickup. The officer activated his vehicle's emergency lights and siren, and the two vehicles quickly moved out of the way, leaving only the white van followed by the blue pickup ahead.

At that point, the blue pickup did not yield or immediately pull over. The officer followed for approximately one half-mile before he could drive around the blue pickup truck and stop the white van. The driver was taken into custody and a search of the van revealed five bales of marijuana (approximately 500 pounds), freezer bags, and scales.

A second officer, following behind the first officer, observed him activate his vehicle's lights and siren and noticed the blue pickup did not immediately pull over. After the blue pickup finally pulled over, the second officer stopped it for failure to yield to an emergency vehicle. Gonzalez-Guytan was driving the blue pickup truck. During the stop, he could not produce a driver's license and stated he was in the United States illegally. He was taken into custody and a visual inspection of the vehicle revealed several rolls of vacuum sealing plastic and a digital scale.

Gonzalez-Guytan was indicted on one count of possession with intent to distribute marijuana and one count of conspiracy to commit the same. He filed a motion to suppress the evidence and statements obtained as a result of the traffic

stop, arguing the stop was not supported by probable cause or a reasonable articulable suspicion that a traffic violation had occurred. A magistrate judge held a hearing on the motion to suppress and issued a report and recommendation, recommending the motion be denied. After considering Gonzalez-Guytan's objections, the district court adopted the report and recommendation.

A jury found Gonzalez-Guytan guilty on both counts and he was sentenced to 78 months' imprisonment. He timely appealed.

## II. Discussion

Gonzalez-Guytan argues the officer who stopped his vehicle lacked probable cause. We disagree. The traffic stop was valid because the officer observed Gonzalez-Guytan's failure to yield to an emergency vehicle that had activated its emergency lights and siren, as required by Oklahoma law.

"When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous and consider the evidence in the light most favorable to the government." *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004). "However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo." *Id.*

We assess the legality of a traffic stop under the principles established in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011). Generally, we conduct two inquiries: (1) whether the traffic stop

"was justified at its inception," and (2) whether "the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place." *Id.* (quotations omitted). Gonzalez-Guytan only challenges the legality of the traffic stop, and thus we must examine whether the stop was justified at its inception.

"A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). "[A]n individual officer's subjective intentions are irrelevant to the Fourth Amendment validity of a traffic stop that is justified objectively by probable cause to believe that a traffic violation has occurred." *City of Indianapolis v. Edmond*, 531 U.S. 32, 45 (2000); *see also United States v. Orduna-Martinez*, 561 F.3d 1134, 1137 (10th Cir. 2009) ("The trooper's subjective intent or good faith do not affect the reasonableness of the stop."). Even if an officer has a subjective motive for a traffic stop, this "will not 'invalidate[] objectively justifiable behavior under the Fourth Amendment.'" *Polly*, 630 F.3d at 997 (quoting *Whren v. United States*, 517 U.S. 806, 812 (1996)) (alteration in original).

Oklahoma law provides:

> Upon the immediate approach of . . . a police vehicle properly and lawfully making use of an audible signal or red flashing lights, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

OKLA. STAT. ANN. tit. 47, § 11-405. Under Oklahoma law, if an officer activates his vehicle's emergency lights and siren, but a driver fails to yield and immediately pull over to the right, the driver has committed a traffic violation.

Gonzalez-Guytan claims his traffic stop was unjustified and unreasonable under the Fourth Amendment because the officer lacked probable cause to stop him based on a violation of § 11-405. He contends a driver must have a reasonable opportunity to (1) recognize an emergency vehicle behind him has activated its lights and siren, and (2) check the adjacent lane to determine if it is safe to yield and pull over. He notes the officer who stopped him wrote in his report that Gonzalez-Guytan failed to yield but did not state how much time passed between the activation of the lights and siren and when Gonzalez-Guytan finally pulled over. He also directs us to a statement in a report by a third officer present at the scene—in addition to the first officer who stopped the white van and the second who stopped Gonzalez-Guytan—that "after several moments" of activating the lights and siren, Gonzalez-Guytan pulled over. *See* Aplt's Br. at 11. Gonzalez-Guytan claims the timing of the events demonstrates he was unable

to both recognize an officer had activated his lights and siren and then pull over, and thus he did not violate Oklahoma law.

We are unpersuaded. Gonzalez-Guytan ignores the testimony from the suppression hearing of two other officers involved in the pursuit. These two officers—one who stopped the white van and the other who stopped Gonzalez-Guytan—both testified Gonzalez-Guytan did not immediately pull over and traveled for approximately one half-mile after the officer activated his vehicle's emergency lights and siren before stopping.

The magistrate judge, in the report and recommendation, considered the evidence from the officers' reports and their testimony at the suppression hearing. While not making an explicit finding, the magistrate judge determined the officer conducting the traffic stop had probable cause to believe Gonzalez-Guytan violated § 11-405. Implicit to this ruling is the factual finding that Gonzalez-Guytan failed to immediately yield and pull over after the officer activated his vehicle's emergency lights and siren. Gonzalez-Guytan does not argue this factual finding is clearly erroneous, nor do we find a basis in the record for such an argument. The magistrate judge obviously credited the two officers' testimony that Gonzalez-Guytan failed to immediately pull over and traveled for one half-mile before finally stopping, and we see no basis to second-guess that conclusion.

The officer's report that Gonzalez-Guytan cites—stating he did not pull over for "several moments"—does not undermine the magistrate judge's factual

finding. Even if it may be unclear what amount of time or distance corresponds to "several moments," it is clear from the officers' testimony that Gonzalez-Guytan failed to yield and immediately pull over in those several moments. In addition, the two cars initially between the pursuing officer and Gonzalez-Guytan immediately pulled over upon the officer's activation of his vehicle's lights and siren. This both highlights Gonzalez-Guytan's failure to do so as he continued driving for one half-mile and further supports the factual finding that he did not immediately yield and pull over.

Gonzalez-Guytan failed to immediately yield and pull over after the officer activated his vehicle's emergency lights and siren—a violation of Oklahoma law.[1] He has made no argument this factual finding is clearly erroneous. An officer observed this traffic violation and initiated a valid traffic stop. *See Winder*, 557 F.3d at 1135 ("Our precedents leave no room to doubt the validity of a traffic stop based on an observed traffic violation."). Therefore, the district court did not err when it denied Gonzalez-Guytan's motion to suppress the evidence obtained from the traffic stop.

---

[1] The officer activated his vehicle's emergency lights and siren in order to initiate a traffic stop of the white van. The magistrate judge determined the stop was justified because the officers had a reasonable articulable suspicion the driver of the white van was involved in criminal activity. If the officer had activated his vehicle's emergency lights and siren without this reasonable suspicion, our analysis regarding Gonzalez-Guytan's failure to yield might differ.

### III. Conclusion

For the foregoing reasons, we AFFIRM Gonzalez-Guytan's conviction.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge